**MILTON G. WALDBAUM COMPANY,**
a Corporation, Plaintiff,

v.

**ROBERTS DAIRY COMPANY,**
Defendant.

Civ. No. 03479.

United States District Court,
D. Nebraska.

Feb. 8, 1971.

D. C. Bradford, of Monsky, Grodinsky, Good & Cohen, Omaha, Neb., for plaintiff.

Victor J. Lich, Jr., of Miller & Russell, Omaha, Neb., and John E. Kidd, of Kenyon & Kenyon, New York City, for defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court on the motion of defendant to dismiss [Filing #7] and on the motion of plaintiff to join an additional party defendant [Filing #13].

In his amended petition plaintiff seeks a declaratory judgment that United States Letters Patent Nos. 3,093,487 and 3,113,872 [hereinafter these patents will be referred to respectively as Patent '487 and Patent '872] have not been infringed by plaintiff and are invalid and are not enforceable and further a finding that defendant is guilty of patent misuse. Jurisdiction is founded on 28 U.S.C. §§ 1338 and 2201 and the Sherman Act.

In 1966 plaintiff started making egg products for the government in accordance with certain specifications.

Said specifications required the use of a process patented by the defendant and defendant represented to plaintiff it was necessary for plaintiff to take out a license with the defendant and a license agreement was entered into between the parties whereby the defendant granted the use of Patents '478 and '872. The defendant, Roberts Dairy, while entitled to

license others [such as the plaintiff herein] is itself only a licensee under Patent '872 and Patent '847. The owner of Patent '872 and the co-owners of Patent '847 have not been joined in this action. However, the plaintiff has moved the Court for permission to add Prep Foods, Inc. as a party defendant. Prep Foods is the sole owner of Pátent '872.

The patents herein contested are presently the subject matter of a pending patent law suit in the United States Court of Claims in Washington, D. C. The Court of Claims law suit was initially filed against the government, but Waldbaum, the plaintiff herein, has been joined as a third party defendant. Also defendant sued plaintiff in Douglas County District Court for past royalties due under the license agreement.

■ Defendant has raised several defenses to plaintiff's cause of action. Roberts contends that a declaratory judgment action cannot be maintained against a patent licensee alone, where the license does not amount to an assignment of all the right to the patent. In effect, the defendant contends that here the patent owners are indispensable parties to the maintenance of this action.

The proposition cited by defendant is indeed the law in this Circuit. Agrashell, Inc. v. Hammons Products Company, 352 F.2d 443 [8th Cir. 1965]. Accordingly, it is for this Court to determine whether the license granted to defendant was an assignment of all the rights under the patent. The license agreement between defendant and the owner of the '872 patent requires Roberts, on becoming aware of infringement "* * * to call this fact to the attention of the parties * * *" Whereupon, "* * * the parties hereto shall agree as to what action is to be taken." [See defendant's brief ¶ 8 of Exhibit C].

The owners of the '847 patent reserve in the patent owners an independent right to sue for patent infringement. [See defendant's brief ¶ 14 of Exhibit D].

In Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 135 F.Supp. 505 [S. D.N.Y.1965] Minnesota Mining moved for dismissal of the patent infringement action on the grounds that the owner of the patent was an indispensable party in whose absence the suit could not be maintained. The court said:

"It has been held that where the patent owner retains under an 'exclusive license' control of litigation to protect the patent, he is an indispensable party to an action brought against such licensee for a declaratory judgment that the patent is invalid. Fluorescent Fabrics, Inc. v. Gantner & Mattern Company, 86 U.S.P.Q. 67 [D.C.S. D.Cal.1950]."

■ In accordance with the license in regard to Patent '872 Prep Foods, the owner is to receive 45% of the net royalties. Also Prep Foods retained equal control with Roberts over suits for infringement. [See defendant's brief Exhibit C, ¶¶ 4, 5, and 7]. Accordingly, the Court holds that the ownership rights retained by Prep Foods were sufficient to constitute Prep Foods as an indispensable party to the maintenance of a Declaratory Judgment Action against Patent '872.

■ Similarly, the license agreement for Patent '487 reserves in the owners the right to substitute Roberts as exclusive licensee if minimum royalty payments are not met [defendant's brief Exhibit D ¶ 7] and reserves in the owners an independent right to sue for patent infringement. [Defendant's brief Exhibit D ¶ 14]. Accordingly, the Court has concluded the owners of Patent '487 and Patent '872 are indispensable parties in whose absence the declaratory action cannot be maintained.

■ The defendant also contends that as there is presently pending in the United States Court of Claims an action involving the same parties and the same issues as raised in plaintiff's first and second causes of action, said claim should be dismissed. Relief under 28 U.S.C. § 2201, the Declaratory Judgment

Statute, is indeed discretionary and the District Courts in the Eighth Circuit have exercised their discretion to deny relief where a pending action in another forum involving the same parties would determine the same issues. See National Union Fire Insurance Co. of Pittsburgh v. Lippert Bros. Inc., 233 F.Supp. 650 [D.C.Neb.1964].

In State Farm Mutual Automobile Ins. Co. v. Bonwell, 248 F.2d 862 [8th Cir. 1957] the Eighth Circuit gave its approval to language from Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321 [4th Cir. 1937] wherein it was stated:

"The object of the statute [Declaratory Judgment Statute] is to afford a new form of relief where needed, not to furnish a new choice of tribunals or to draw into the federal courts the adjudication of causes properly cognizable by courts of the states." 92 F. 2d at 324.

■ Here the very relief sought by plaintiff in his first two causes of action will be determined by the pending Court of Claims suit. In such circumstances the Court believes it would be uneconomical as well as vexatious for it to proceed with the declaratory judgment suit.

Plaintiff, however, argues that this declaratory suit should not be dismissed because the Court of Claims presently has under submission a motion to dismiss Waldbaum as a party. This Court has determined that there are two legal bases for denying plaintiff the declaratory judgment relief he seeks, and irregardless of the action the Court of Claims takes as regards Roberts' Motion to Dismiss, a suit cannot be maintained in this Court in the absence of the patent owners. Plaintiff, however, has also moved the Court for leave to join Prep Foods, the owner of Patent '872. The Court can see no reason why such joinder would prejudice defendant and leave to join said party will be granted if service is possible.

In light of the foregoing the Court has determined that plaintiff's first two causes of action should be dismissed insofar as they relate to Patent '487. The grounds for dismissal is the failure to join the owners of said patents—indispensable parties to the maintenance of the suit. The first two causes of action insofar as they relate to Patent '872 will be stayed until pending a resolution of the Court of Claims suit. In the event Prep Foods is not joined within twenty [20] days from the date of this Memorandum, the first two causes of action shall likewise stand dismissed as regards Patent '872.

■ This leaves for resolution the motion to dismiss insofar as it is related to the third cause of action. This claim alleges violations of the anti-trust laws, and seeks past paid royalties, certain expenses and treble damages.

As this claim is premised on a finding of patent invalidity and in light of my previous conclusions regarding dismissal or staying of any determination of patent validity until these issues are disposed of by the Court of Claims proceedings, this third cause of action, if it is not subject to a summary dismissal, should likewise be stayed until the patent validity issues have been resolved by the Court of Claims.

Defendant, however, strongly argues that plaintiff's anti-trust claim should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff has premised jurisdiction for his anti-trust cause of action under 20 U.S.C. § 41[23]. There is no such statute but references in the petition to conspiracy and monopoly violations of the anti-trust violation would indicate plaintiff is relying on jurisdiction under § 4 of the Clayton Act, 15 U.S.C.A. § 15, for alleged violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1 and 2.

■ This Court is not unmindful of the great restraint to be exercised by a court in summarily dismissing an anti-trust action; Norfolk Monument Co. v. Woodlawn Memorial Gardens, Inc., 394 U.S. 700, 704, 89 S.Ct. 1391, 22 L.Ed.2d

658 [1969]. However such action is required in those cases where the allegations of the complaint are without merit, Hiland Dairy, Inc. v. Kroger Co., 402 F. 2d 968 [8th Cir. 1968]. The parties, I am sure, are aware that general allegations of conspiracy, without statement of facts constituting a conspiracy or monopoly are insufficient to constitute a cause of action. McCleneghan v. Union Stock Yards Co. of Omaha, 298 F.2d 659 [8th Cir. 1962]. In pleading such an action it is necessary to allege the existence of the conspiracy and the overt acts done pursuant thereto, showing the means by which the monopoly was effected or attempted.

The specific factual allegation upon which plaintiff relies to maintain his anti-trust claim are found in paragraph XI of the plaintiff's amended complaint. Therein it is stated that:

"The actions of the defendant in representing to the plaintiff that it must obtain a license in order to bid and supply the United States Defense Department pursuant to said notice, together with the defendants granting of said license pursuant to said agreement which prevented the plaintiff from forever contesting or infringing on said patents, was part and parcel of a conspiracy to monopolize and restrain the trade of the production of 'Egg Mix: Dehydrated'."

The Court has carefully considered the various allegations raised in ¶ XI of plaintiff's amended complaint and concludes that there are but two factual allegations asserted:

1. That the license agreement entered into between plaintiff and defendant prevented the plaintiff from forever contesting or infringing on said patents, and

2. That Roberts represented to the plaintiff that it must obtain a license in order to bid and supply the United States Defense Department under notice entitled, "Egg Mix: Dehydrated".

It is now the duty of this Court to determine whether either of the above-referred to allegations, if true, would constitute a violation of the Sherman Act.

Agreements which prevented the licensees from challenging the validity of a patent have been considered valid in the past. Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 70 S.Ct. 894, 94 L.Ed. 1312 [1950]. However, on June 16, 1969, the United States Supreme Court in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 [1969], held:

"We are satisfied that Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc., *supra,* itself the product of a clouded history, should no longer be regarded as sound law with respect to its 'estoppel' holding, and that holding is now overruled."

■■■ According to the amended complaint filed by the plaintiff the license agreement between the parties herein was entered into April 12, 1966. Thus at the time the agreement was made the questioned provision was lawful.

In my opinion, a provision lawful at the time of its inception cannot later be a basis for retroactively finding an anti-trust violation. For a similar conclusion see Kearney & Trecker Corporation v. Giddings & Lewis, Inc., 306 F. Supp. 189 [D.C.1969].

This leaves for consideration whether the allegation that Roberts represented to the plaintiff that it must obtain a license from Roberts to bid on the contract in question is sufficient to resist a motion to dismiss. The above allegation of plaintiff can be interpreted in two ways. First, it is possible that it was not necessary for the plaintiff to obtain a license from defendant to bid in accordance with the United States Defense Department notice. That is, it may have been possible by other means for plaintiff to fulfill the terms of the bid for the production of "Egg Mix: Dehydrated". Perhaps other obtainable patent licenses could have enabled plaintiff to comply with the bid or perhaps the production could have been providential without the use of a special license. In

this case defendant's representations would have been false and fraudulent and it is possible that an anti-trust violation could be premised on such conduct if the other statutory requisites were met. See 15 U.S.C. §§ 1 and 2.

■ However, it is possible that the notice in question actually did require, per its specification, the use of the patents to which Roberts is licensee. If this is the case, the defendant's representations that it was necessaryy to obtain a license from defendant to fulfill the required terms of the government notice were in fact the truth. If the latter is correct then I do not believe such allegations state a claim under the anti-trust laws and plaintiff's third cause of action would have to be dismissed. The anti-trust violations normally alleged in regard to license agreements are missing here. There is no asserting, for instance, of attempted price fixing or tying arrangements through the license agreement. Such conduct, if true, would constitute anti-trust violations. See United States v. New Wrinkle, Inc., 342 U.S. 371 [1952], 72 S.Ct. 350, 96 L.Ed. 417 and International Salt Co., Inc. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947). However, the granting of a license by an exclusive licensee does not constitute a violation of the antitrust laws. Foundry Services, Inc. v. Beneflux Corp., 110 F.Supp. 857 [D.C. N.Y.1953].

■ The Court has no way of knowing if the government notice heretofore referred to did in fact specify the use of the patent processes here in question or if defendant falsely represented that said patents were required. Thus the third cause of action will stand dismissed after twenty [20] days unless plaintiff amends the pleading to allege that license agreements were not required by the notice but were falsely and fraudulently represented as necessary by defendant.

In accordance with the views expressed in this Memorandum an Order will be entered this same date.