**LEEWARD PETROLEUM, LIMITED, Plaintiff,**

v.

**MENE GRANDE OIL CO. and Gulf Oil Corporation, Defendants.**

**Civ. A. No. 75–245.**

United States District Court, D. Delaware.

May 25, 1976.

Thomas S. Lodge, of Connolly, Bove & Lodge, Wilmington, Del., George W. Renaudin, of Royston, Rayzor, Vickery & Williams, Houston, Tex., of counsel, for plaintiff.

E. Norman Veasey, and Richard J. Abrams, of Richards, Layton & Finger, Wilmington, Del., Edward F. Gilhooly, of Gulf Oil Corp., Philadelphia, Pa., and Eugene Harkins, of Gulf Oil Corp., Coral Gables, of counsel, for defendants.

CALEB M. WRIGHT, Senior District Judge.

This action was brought by the plaintiff Leeward Petroleum, Ltd. ("Leeward"), a Bermuda corporation, against the defendants Mene Grande Oil Co. ("Meneg"), a Delaware corporation, and Gulf Oil Corporation ("Gulf"), a Pennsylvania corporation, to redress a breach of contract and certain violations of the anti-trust laws. The defendant Gulf has moved to dismiss the allegations pending against it, under Rule 12(b)(6), Fed.R.Civ.Proc.

The cause of action arises out of certain dealings between the plaintiff and the defendant corporations. According to the allegations of the Amended Complaint,[1] which must be taken as true for purposes of this motion, the plaintiff sought to purchase Venezuelan crude oil from Meneg, which held a concession from the Venezuelan government. By letter, plaintiff accepted Meneg's offer for the sale of 3.6 million barrels of Venezuelan crude, the transaction to be carried out in the form of an "intra-Venezuelan" sale, in order to avoid certain Venezuelan government restrictions on sales. Plaintiff then contracted to resell the crude to a United States refiner, who is not a party here.

Prior to the time for its performance of the contract, Meneg informed the plaintiff that it would not deliver the crude oil, stating that it had been notified by the Venezuelan government that the transaction was prohibited. Leeward refused to accept this purported act of state as a force majeure sufficient to release Meneg, and pressed for performance. Negotiations commenced on this point and continued until Leeward was told that Gulf, the grandparent of Meneg,[2] had ordered Meneg not to make the sale, and that all further negotiations should be carried on with Gulf. Leeward's president flew from Caracas, Venezuela to Pittsburgh, Pennsylvania, and met with Gulf representatives, but was unable to obtain Venezuelan crude at the bargained-for price.[3] The contract remained

---

1. The Original Complaint was replaced with an Amended Complaint after the defendants had moved to dismiss. After the Amended Complaint was filed, certain objections made to the Original Complaint were renewed as to the Amended Complaint.

2. That is, Meneg is wholly-owned by a subsidiary of Gulf. It does not appear on the record whether the Gulf subsidiary is also wholly-owned.

3. Gulf is alleged to have offered Leeward Ecuadorian crude oil, but at a substantially higher price than that agreed upon between Meneg and Leeward for Venezuelan crude.

unperformed, and Leeward defaulted on its resale contract.

From this factual predicate, Leeward pleads several causes of action. The first cause of action, not presently before the Court, is stated against Meneg for ordinary breach of contract.[4] Leeward next asserts several alternative forms of action against Gulf, including tortious conspiracy to breach the contract; tortious interference with contract rights; and violation of the anti-trust laws. To these Gulf objects on the grounds that the Amended Complaint fails to set forth with specificity the required grounds for such causes of action; and that the facts alleged do not constitute such causes of action. For the reasons discussed *infra*, the Court denies Gulf's motion, and Gulf will therefore have the time specified in Rule 12(a)(1) to file a responsive pleading.

## A. *Legal Standard*

■ The standard by which a Court determines the sufficiency of a complaint under a Rule 12(b)(6) motion is well known, and not here in dispute. All well pleaded allegations of the complaint must be taken as true. *Cruz v. Beto,* 405 U.S. 319, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972); *Walker Proc. Equip., Inc. v. Food Mach. & Chem. Corp.,* 382 U.S. 172, 86 S.Ct. 347, 15 L.Ed.2d 247 (1965); 2a Moore's Federal Practice ¶ 12.08 at 2267 & n. 3. The complaint must be liberally construed, with the benefit of all proper inferences being given to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 ·S.Ct. 99, 101–102, 2 L.Ed.2d 80, 84–85 (1957); Rule 8(f), Fed.R.Civ.Proc. Nor must every essential fact be set down in the pleadings: it is sufficient if a fair reading of the complaint provides sufficient notice

of the claim and its scope. *Id.* Only if it appears that the plaintiff is entitled to no relief under any state of facts which could be proven under the complaint should the motion to dismiss be granted. *See, Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974); 2a Moore's Federal Practice ¶ 12.08 at 2271–74, n. 5, 6, and 7, *and* cases cited therein.

■ Under this standard, the present complaint is sufficient to state a cause of action. It is true that the complaint could be more artfully drawn, and that the language used is sometimes less than crystal clear.[5] Nonetheless, it fairly puts the defendant Gulf on notice as to the nature of the claims, and the substance of the allegations; and the Court cannot say as a matter of law that the plaintiff is entitled to no relief under any provable state of facts.

## B. *Gulf's Claims*

### 1. *Count 2*

Count 2 of the Amended Complaint recites certain of the facts set out above, as they allegedly occurred following Meneg's initial letter of acceptance. The Count further alleges that Meneg was and is the "alter ego" of Gulf, and that therefore Gulf is also liable for the breach of contract. Gulf urges dismissal of this Count on the grounds that a corporate veil may be pierced only when there are showings of fraud in the use of the second corporation.

■ The Court does not need to address specifically that issue. The facts pleaded in Count 2 are sufficient, if proven, to allow the inference that Gulf by its actions during the negotiations became a principal on the contract between Meneg and Leeward, and might therefore be liable on the contract itself. *See generally, Fluor Corp. v. United*

---

4. The Court is informed that Meneg may wish to pursue a *forum non conveniens* motion that had been raised in response to the initial complaint. The Court does not here determine that issue.

5. For example, rather than alleging facts, plaintiff has adopted a pleading style in which it states what it would "show"; thus: "For a

third cause of action, Plaintiff, adopting all of the allegations of Paragraphs 9 through 13 above, would show that Defendants Meneg and Gulf committed a tortious conspiracy to breach the contract of 5 May, 1975, for which plaintiff is entitled to damages as set forth below." Amended Complaint at ¶ 14.

*States ex rel. Mosher Steel Co.*, 405 F.2d 823 (9th Cir. 1969). In addition, if Leeward shows that Meneg fraudulently claimed an act of state on Gulf's orders, a showing of corporate fraud sufficient to pierce the corporate veil might be made out. At this stage of the proceedings, the issue is not the likelihood of plaintiff's prevailing, but whether plaintiff may be allowed to present evidence. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90, 96 (1974). Judged by this standard, the motion to dismiss Count 2 must be denied.

### 2. *Count 3*

Count 3 realleges the facts of Count 2, and further alleges a tortious conspiracy. Gulf attacks the Count on two grounds, urging that it is fatally inconsistent; and that it does not plead the facts of a conspiracy with sufficient detail.

■ Both grounds of dismissal must fail. As to inconsistency, the Court merely notes that Rule 8(e)(2) specifically allows all pleadings no matter how inconsistent.[6] *Cf. Quinones v. United States*, 492 F.2d 1269, 1275 & n. 15 (3rd Cir. 1974). The pleading here is not so inconsistent as to be difficult to understand, or to create an inability to frame a responsive pleading. It merely states what must indeed be obvious: if Gulf was not a principal on the contract, then it was a separate entity and any agreement between Meneg and Gulf to breach the contract for their own purposes, absent a privilege, would be a tortious conspiracy to breach.

■ It is a longstanding rule in this Circuit that a mere general allegation of a conspiracy is insufficient. *Black & Yates, Inc. v. Mahogany Assoc.*, 129 F.2d 227, 231 (3rd Cir. 1942). And *see, Milton G. Waldbaum Co. v. Roberts Dairy Co.*, 325 F.Supp.,

772, 776 (D.Neb.1971). Here, however, plaintiff has set out the parties to the alleged conspiracy (Meneg and Gulf); the period of the conspiracy; the object of the conspiracy (to breach the contract between Leeward and Meneg); and certain actions of the alleged conspirators taken to achieve that purpose. The allegations, if proven, are precise enough to give rise to an inference of a conspiracy, and therefore Gulf's motion must fail.

### 3. *Count 4*

Count 4 realleges the foregoing facts and further alleges that Gulf tortiously interfered with Leeward's contractual rights. Gulf asserts that the count is insufficient in that it is inconsistent; and fails to allege that the interference was "intentional", and thus is insufficient as a matter of law.

The issue of inconsistency has been decided above, and the Court will not repeat the discussion here. It is sufficient to say that the allegations are a proper alternative pleading, under Rule 8(e)(2) despite minor inconsistencies in the allegations. When read as a whole, they fairly apprise the defendant of the charges leveled against it.

■ The Court will assume *arguendo* that "intention" is required in order to prove the tort of interference in contract rights.[7] *See* Restatement of Torts § 766. If intent is, as a matter of law required in order to make out a case of interference with contractual rights, then Leeward will have to prove sufficient facts at trial to allow such a finding. The actual existence of intent, however, is a proper issue only on summary judgment or at trial.

The Count is sufficiently pleaded, since the allegations read as a whole can lead to an inference that the actions were carried on with intent on the part of Gulf; that is,

---

**6.** Rule 8(e)(2) provides in pertinent part:

". . . A party may also state as many separate claims or defenses as he has *regardless of consistency* and whether based on legal, equitable, or maritime grounds." (emphasis added). *See* 2a Moore's Federal Practice ¶ 8.32 & n. 6.

**7.** The Court notes that the defendants cited no Delaware cases for this point, and its own research has not disclosed any on point. There is, moreover, a threshold question of choice of law, if there is assumed to be a difference in the standards of this tort among jurisdictions. Assuming intention is necessary, however, the Court has no need to address the question at this time.

actions were knowingly taken by Gulf or its officers and agents with knowledge of the consequences of the actions. This is particularly so where Gulf "took over" the negotiations which followed the notification of breach, after learning that Leeward would not accept the force majeure excuse, and was demanding performance.

■ Gulf further urges that it cannot in any event be charged with tortious interference because its conduct is privileged. Gulf states that a grandparent or parent has an absolute right to control the behavior of a subsidiary for the benefit of the parent.[8] This Court cannot now accede as a matter of law that such a privilege, if it exists, applies here. If such a privilege exists, it exists only for proper purposes by use of proper means, not for the commission of torts; see note 8, supra. In any event, before the Court could rule on such a question, it would require a factual showing on the background of the transaction, and the respective interests of all the parties. Such a factual showing must await summary judgment or trial.

Moreover, if such a privilege were held to exist, Gulf might well be bound by its burdens as well as its benefits. The Court under those circumstances might well be able to find the separate corporate existence of Meneg to be a mere sham. The Court, therefore, does not now address the issue of the interplay between parent and subsidiary, absent a much fuller factual showing. The motion to dismiss is denied.

### 4. Count 6

Count 6 of the Amended Complaint alleges that Meneg and Gulf took the actions described *supra* for the purpose of protecting the "intra-firm" price for Venezuelan crude oil, and thus to maintain the price in other markets under Federal Energy Administration regulations. The Count then alleges that the result is a violation of both Section 1 of the Sherman Act,[9] and the Wilson Act [10] since the actions were taken by an importer in inter-national commerce. Gulf seeks dismissal of this Count on several grounds, urging that Leeward has failed to allege the conspiracy with requisite specificity; that the acts alleged could not in any way have actually succeeded in influencing market prices under FEA regulations; that Leeward has failed to establish that the result of any such scheme would be an injury to it; and that in any event, no such conspiracy is possible because Gulf is privileged in its relationship to Meneg, its subsidiary.

The issue of the specificity of the complaint with regard to conspiracy has been addressed. As noted, *supra,* the complaint identifies the parties to the "agreement"; the time of the conspiracy; the purpose of the conspiracy; and actions taken to effectuate it. No further specificity is required in the complaint. Any additional data which Gulf might seek can be acquired through discovery.

Gulf continues to urge its "privilege" to make agreements with its subsidiary, an argument which is akin to that raised *supra* with regard to "tortious interference." The essential point of the argument is that while some "bathtub conspiracies" have been found illegal by the Supreme Court, *see Perma Life Mufflers, Inc. v. Interna-*

---

**8.** Gulf cites the Restatement of Torts, §§ 767, 769–71, which discuss a purported privilege from liability for interfering in contractual obligations when the interferor has a certain relation to the party being urged to breach, or not to enter into a contract. The Court notes first that there is no controlling citation for this Court given in defendant's brief. Moreover, the cases cited and indeed the language of the Restatement itself may differ from the privilege urged by Gulf. For example, one who has a financial or economic interest is privileged to cause another "not to enter into or continue in a relation with a third person"; while only one who is "responsible for the welfare of another" is privileged "purposely to cause him not to perform a contract, or enter into or continue a business relationship." *Compare,* Restatement of Torts §§ 769, 770 *and* 771. And even in those cases where a privilege attaches, it attaches only where no improper means are used, and other conditions are met. *Id.*

**9.** 15 U.S.C. § 1, as amended.

**10.** 15 U.S.C. § 8, as amended.

*tional Parts Corp.,* 392 U.S. 134, 88 S.Ct. 1981, 20 L.Ed.2d 982 (1968); *Timken Roller Bearing Co. v. United States,* 341 U.S. 593, 71 S.Ct. 971, 95 L.Ed. 1199 (1951); *Kiefer-Stewart Co. v. Joseph Seagram & Sons, Inc.,* 340 U.S. 211, 71 S.Ct. 259, 95 L.Ed. 219 (1951); *and United States v. Yellow Cab Co.,* 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947), these cases have been criticized by commentators, and lower courts have on occasion found such conduct to be "reasonable".[11] Moreover, Gulf asserts here the conduct is covered by the so-called *Colgate* doctrine under which any individual may refuse to deal with another. *See United States v. Colgate & Co.,* 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Gulf urges that the fact that it chooses to do business through a subsidiary should not affect its ability to refuse to deal for its own reasons; and that such refusals should not be denominated concerted refusals to deal proscribed under *Klor's, Inc. v. Broadway-Hale Stores,* 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

The Court will not on a dismissal motion undertake to determine either whether the alleged acts by Gulf in fact lie within the *Colgate* privilege; or whether its incorporation of Meneg was designed to allow it or was used by it to maintain artificial price levels in selected markets. The Court has before it on this motion neither facts nor affidavits. The line separating reasonable and unreasonable behavior between a parent and a subsidiary is a cloudy one. This Court cannot find Gulf's conduct absolutely privileged on the present record, even though it is cognizant of the claims of commentators on the "economic reasonableness" of such a form of doing business.

Similarly, the Court cannot now conclude that the FEA regulations allowed Gulf to utilize such a scheme to maintain prices. The Court has examined the complex regulations on base pricing contained in 10 CFR § 212.1 *et seq.,* and finds them impossible of solution absent proof on issues such as the actual amount of production in a given month from a given country, etc.[12] Any determination of the efficacy of such a purported restraint must await summary judgment or trial.

The last issue raised by Gulf is the "standing" of Leeward. Gulf preferred to address the issue as a failure to plead necessary facts, *viz.* that an injury resulted to Leeward from the allegedly anti-competitive acts. For clarity of analysis, the Court prefers to address the issue as whether the injury which Leeward has alleged gives it standing to raise the anti-trust claim also asserted.

This difficulty arises because of the phrasing used by the plaintiff in making its complaint.[13] Read alone, the Amended

11. *See generally, Minnesota Bearing Co. v. White Motor Corp.,* 470 F.2d 1323 (8th Cir. 1973); *Beckman v. Walter Kidde & Co.,* 316 F.Supp. 1321 (E.D.N.Y.1970), *aff'd,* 451 F.2d 593 (2d Cir. 1971), *cert. denied,* 408 U.S. 922, 92 S.Ct. 2488, 33 L.Ed.2d 333 (1972).

12. For example, 10 C.F.R. § 212.84(e), regulating base prices in foreign produced crude oil, reads in part:

"(1) The representative price for a reference crude oil shall be the lowest price at which fifty percent or more (as measured by the volume) of arms-length transactions in that reference crude oil and (at adjusted prices) related crude oils, loaded during a month of measurement and reported to the FEA, take place. . . . ." There follows several sections of exceptions and definitions. The Court cannot determine the efficacy of the purported scheme without knowing much more than it does about volume, arms-length transactions, and reference months.

13. Count 6 of the Complaint reads as follows: "For a sixth cause of action, and adopting the foregoing paragraphs 9 through 19, plaintiff would show that Defendant Gulf conspired with Defendant Meneg in refusing to sell Venezuelan crude oil to Plaintiff outside Venezuela on the grounds that it would adversely affect Gulf's FEA intra-company transfer price or value (as aforesaid), in that it would substantially reduce the base price or value chargeable for future offshore sales, lowering the artificially high offshore sale price or value. This conspiracy and combination in restraint of commerce, maintaining a minimum price level on offshore crude oil was economically injurious to the general public and was in direct violation of 15 U.S.C.A. § 1 (1973)—the Sherman Anti-trust Act."

Amended Complaint, ¶ 21. Paragraph 22 of the Amended Complaint alleging a violation of 15 U.S.C. § 8 is similarly phrased.

Complaint could be seen as alleging only an injury to the general public, evidently the maintenance of prices in the retail market of refined oil products. The cases are clear that the interest of the general public are to be vindicated through injunctive suits brought by the Justice Department, the Federal Trade Commission, or by a private plaintiff, but not by private damage suits. *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 260–64, 92 S.Ct. 885, 890–92, 31 L.Ed.2d 184, 191–93 (1972); *In re Multi-district Vehicle Air Pollution,* 481 F.2d 122 (9th Cir. 1973). *And compare, United States v. Borden Co.,* 347 U.S. 514, 518–19, 74 S.Ct. 703, 706–07, 98 L.Ed. 903, 908–09 (1954) *with Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 130–31, 89 S.Ct. 1562, 1580–81, 23 L.Ed.2d 129, 151–52 (1969). If the Court were to read Count 6 as merely making an allegation of injury to the general public, it would be required to dismiss.

Defendants once again make the error, however, of reading the Count in isolation from the rest of the allegations of the Amended Complaint. Read as a whole, it is apparent that Leeward's Amended Complaint claims that the refusal by Gulf and Meneg to deal with it and the resulting breach of contract, were part and parcel of the alleged anti-trust scheme. Leeward has thus alleged a specific injury to it, with associated monetary damages, which it asserts has resulted from the anti-competitive behavior of the defendants.

■ The major difficulty with Leeward's claim is the relationship of that injury to the anti-trust claim involved. Although § 4 of the Clayton Act,[14] which gave individuals the right to sue on anti-trust claims, is framed in very broad language,

the courts have consistently restricted the language to prevent every contract claim from becoming an anti-trust claim. *See In Re Multi-district Vehicle Air Pollution, supra,* 481 F.2d at 125.

Gulf asserted at oral argument that Leeward could not bring itself within the "target area" of the alleged anti-trust violation, because that area was the retail market, and Leeward never dealt in that market as a purchaser or a competitor. After careful consideration, this Court is of the opinion that the injury alleged, and the market alleged by inference, are sufficiently related to the anti-trust violation to give Leeward standing.

It should be noted first that this Court does not agree with Gulf's characterization of the "target area" test as the correct test to be applied. The Circuits have split in the use of so-called "target area" tests and so-called "direct-injury" tests. *See In re Multi-district Vehicle Air Pollution,* 481 F.2d at 126–27; *and Hawaii v. Standard Oil Co.,* 405 U.S. at 262–63, n. 14, 92 S.Ct. at 891–92, 31 L.Ed.2d at 192–93. The Third Circuit, in its last opinions on this point, continued to speak in terms of "direct-injury", though it mentioned the "target area" test. *See Deaktor v. Fox Grocery Co.,* 475 F.2d 1112, 1115 (3rd Cir. 1973); *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3rd Cir. 1970).

Moreover, the Court is not convinced by the Ninth Circuit's attempt to read *Perkins v. Standard Oil Co.,* 395 U.S. 642, 89 S.Ct. 1871, 23 L.Ed.2d 599 (1969); *and Hawaii v. Standard Oil Co.,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), together as establishing the "target area" test as the approved one. *See In re Multi-district Vehicle Air Pollution,* 481 F.2d at 128.[15]

---

14. "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." Act of October 15, 1914, 38 Stat. 731, § 4, 15 U.S.C. § 15.

15. Thus, the *Vehicle Air Pollution* opinion finds in *Perkins,* 395 U.S. at 648, 89 S.Ct. at 1874, 23 L.Ed.2d at 606, a disapproval of the "nexus" test between claimant and defendant, and then goes on to argue that the Supreme Court approvingly cited language from a "target area" case, *Karseal Corp. v. Richfield Oil Corp.,* in reversing. *See,* 481 F.2d at 128.

As this Court reads *Perkins,* Mr. Justice Black was much less concerned with "target areas" of anti-competitive behavior, then the

Under either test, however, this Court believes the focus must be the same. The test for the standing of a plaintiff in an anti-trust suit must be the same as that for any plaintiff under a federal scheme of regulation. Standing is to be determined by answering "the question whether the interest sought to be protected by the complainant is within the zone of interest to be protected or regulated by the statute . . . ." *Association of Data Process Service Org. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184, 188 (1970); *and Barlow v. Collins,* 397 U.S. 159, 164, 90 S.Ct. 832, 836, 25 L.Ed.2d 192, 198 (1970). Thus, the injury which is alleged to have occurred must be proximately related to the anti-trust violation being perpetrated. It is not the intervening levels of dealing or privity; nor whether the injured party is within the zone of competition which the anti-trust violation was *intended* to impact. *Perkins,* note 16, *supra.* Rather, it is whether the impact of the violation and the acts which are its concomitant and indeed its source, necessarily result in injury to the claimant; and whether that claimant is one who is protected by the anti-trust laws; that is, a competitor. The claimant under the anti-trust laws must bear some special injury beyond that accruing to the general public. *See, Hawaii v. Standard Oil Co.,* 405 U.S. 251, 260–64, 92 S.Ct. 885, 890–92, 31 L.Ed.2d 184, 190–93. Where an individual seeks a special recovery for acts which are injurious to the public as a whole, he must establish that his injury is by its nature different from the general public's and is directly related to his ability to carry on his business.[16] Thus, the injury alleged in the anti-trust suit must relate not simply to a business loss, but most go directly to his continuation in the trade or business as a part of the competitive market.

Judged by this standard, Leeward's Amended Complaint is sufficient to overcome the motion to dismiss. Anti-trust complaints must be leniently read, with deference to proof of complex factual situations. *Radiant Burners, Inc. v. Peoples Gas, Light & Coke Co.,* 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961). Reading the complaint as a whole, it is apparent that Lee-

---

requirement that the link between the "delict" and the injury be direct and proximate. "Before an injured party can recover damages under the Act, he must, of course, be able to show a causal connection between the price discrimination in violation of the Act and the injury suffered. This is true regardless of the 'level' in the chain of distribution in which the injury occurs . . . . . If there is sufficient evidence in the record to support an inference of causation, the ultimate conclusion as to what that evidence proves is for the jury. [Citation omitted]. Here the trial judge properly charged the jury that Perkins had the burden of showing that any damage to his business was proximately caused by Standard's price discriminations and there was substantial evidence from which the jury could infer causation." *Perkins,* 395 U.S. at 648–49, 89 S.Ct. at 1874–75, 23 L.Ed.2d at 607.

The Ninth Circuit's view that *Perkins* approvingly cites *Karseal* and its target area test is also open to debate. *Perkins* states: "The Court of Appeals, in order to give guidance to the trial judge at the proposed new trial, noted that, in its opinion, these damages were not proximately caused by Standard's violations and that Perkins should not recover for these damages in a second trial. For this proposition the Court of Appeals cited *Karseal Corp. v.*

*Richfield Oil Corp.,* 9 Cir., 221 F.2d 358, 363, which held that 'the rule is that one who is only *incidently* injured by a violation of the antitrust laws,—the bystander who was hit but not aimed at,—cannot recover against the violator.' It is clear in this case, however, that Perkins was no mere innocent bystander; he was the principal victim of the price discrimination practiced by Standard. Since he was directly injured and was clearly entitled to bring this suit, he was entitled to present evidence of all his losses to the jury." 395 U.S. at 649–50, 89 S.Ct. at 1875, 23 L.Ed.2d at 607 (emphasis in original).

The passage is hardly unequivocal endorsement of a target test; it seems to speak more clearly of a concern for the victim, not the target.

**16.** 15 U.S.C. § 15 formalizes this requirement by stating on its face that the plaintiff must have been injured in his trade or business. *See* note 15, *supra.* And *see Hawaii v. Standard Oil Co.,* 405 U.S. 251, 260, 92 S.Ct. 885, 890, 31 L.Ed.2d 184, 190. The requirement of a special injury also occurs in suits by private parties for damages resulting from a public nuisance. *See e. g., Burgess v. M/V Tamano,* 370 F.Supp. 247 (D.Me.1973).

ward is an oil broker, buying from foreign producers and reselling to United States refiners, making its profit on the break between the two prices. According to the allegations, Gulf believed that it could accomplish or assist in the maintenance of retail prices by maintaining prices in another market level, through an agreement with the foreign producer Meneg.[17] The conspiracy to maintain prices in the retail market thus entailed a conspiracy to maintain prices in the "wholesale" producer to refiner market, in which Leeward was a competitor. The necessary result of a conspiracy to maintain prices in that market would be to foreclose Leeward from competing with the vertically integrated producer-refiner combination, since it could not achieve the price differential which would allow it to function as a broker. On that basis, Leeward has alleged an injury directly related to the anti-competitive scheme alleged to have been perpetrated.[18] Leeward, therefore, has standing to raise the anti-trust claim insofar as its own injuries are concerned.

Defendants' motion to dismiss Counts 2, 3, 4 and 6 of the Amended Complaint is denied.

---

17. The existence of the agreement must be assumed, and the effects of the agreement likewise, since all the well-pleaded factual allegations of plaintiff's complaint must be taken as true. See p. 162, supra.

18. The Court does not here address the question of whether all the injuries claimed in the complaint are in fact directly related to the anti-competitive scheme, or whether they need be. See note 16, supra. There is time enough after discovery and on motions for summary judgment to narrow the claims, if required.