Deborah A. NORTHCROSS et al., Plaintiffs-Appellants Cross-Appellees,

v.

BOARD OF EDUCATION OF the MEMPHIS CITY SCHOOLS et al., Defendants-Appellees Cross-Appellants,

and

City of Memphis et al., Added Defendants-Appellees Cross-Appellants.

Deborah A. NORTHCROSS et al., Plaintiffs-Appellants Cross-Appellees,

v.

BOARD OF EDUCATION OF the MEMPHIS CITY SCHOOLS et al., Defendants-Appellees Cross-Appellants.

Nos. 78–1289 to 78–1291, 78–1458 and 78–1459.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1979.

Decided Nov. 23, 1979.

Rehearing Denied Jan. 17, 1980.

626

Norman J. Chachkin, Washington, D. C., G. Philip Arnold, Memphis, Tenn., for plaintiffs-appellants cross-appellees in Nos. 78–1289 to 78–1291.

Jack Greenberg, James M. Nabrit, III, Bill Lann Lee, New York City, Louis R. Lucas, Richard B. Fields, William E. Caldwell, Ratner, Sugarmon, Lucas & Henderson, Memphis, Tenn., for plaintiffs-appellants cross-appellees in all cases.

Ernest Kelly, Jr., Cobb, Edwards, Hamlet, Nichol & Woodall, Memphis, Tenn., for Board of Education.

Clifford D. Pierce, Jr., City Atty., Arthur J. Shea, Charles V. Holmes, Memphis, Tenn., Frierson M. Graves, Jr., City Atty., Memphis, Tenn., for City of Memphis.

Before WEICK and CELEBREZZE, Circuit Judges, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

These appeals challenge the award of fees made by the district court in the course of the Memphis school desegregation case. In this opinion, the Court will address a few of the remaining legal controversies concerning the proper application and interpretation of 42 U.S.C. § 1988, the Civil Rights Attorney's Fees Awards Act of 1976, which authorizes an award of attorneys' fees to prevailing parties in certain civil rights cases, and sets out standards for the guidance of the district courts in this Circuit to aid them in the exercise of their discretion in the granting of such fees. The first award was made in 1977 [hereinafter, the "1977 Fee Award"] during a temporary lull in the litigation of the underlying case, and following the final judicial approval of an adequate desegregation plan. The second award [the "1978 Fee Award"] was granted to compensate for subsequent services rendered to the plaintiffs in the course of their opposition to the School Board's attempt to modify the plan. The plaintiffs, the School Board and the City of Memphis have all appealed from the awards made by the district court.

## I. THE BACKGROUND OF THE CASE

Since these appeals concern only the two fee awards granted by the district court, a detailed explanation of the long, complicated history of this bitterly contested school desegregation case is not necessary. A general description is all that is required to give an understanding of the scope and quality of representation provided by the plaintiffs' attorneys in the course of the last two decades.

The underlying fact is that in 1960, when this suit was first filed, the Memphis schools were segregated on the basis of race, and today an effective, final order of desegregation is in operation. It has required years of constant litigation, numerous reported decisions and several trips to the Supreme Court to achieve that result. The suit was filed in 1960, and was dismissed by the district court. This Court reversed that decision in 1962, and remanded for development of a desegregation plan. A limited plan was adopted in 1963, and a year later, this Court again reversed, rejecting the plan as inadequate. Nearly two years later, in 1966, a modified plan was tentatively approved by the district court, and an uneasy state of repose was reached. While the plaintiffs objected to some aspects of the plan, their motion for an injunction was denied. At the same time,

however, the Board was put on notice by the court that some aspects of the plan needed further study and additional relief might be ordered in the future.

Nothing further of significance occurred for nearly two years, when the Supreme Court rendered its historic decision in *Green v. County School Bd.*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), making it clear that the plaintiffs were entitled to further relief which would have real prospects of dismantling the state-imposed dual system at the "earliest practicable date." The plaintiffs promptly moved for further relief, and the case geared up again, not to slow down for years to come.

For the next four and a half years, the case moved at a steady pace back and fourth between the district court, this Court and the Supreme Court, as one phase after another of an effective, comprehensive desegregation plan was hammered out. In 1973, a new twist was added when the City of Memphis attempted to block desegregation by enforcing a city ordinance requiring that certificates of public convenience and necessity be obtained before operating transportation vehicles within the city, withholding funds from the School Board and refusing to supply gasoline to the Board. These matters were all ultimately resolved against the City.

In April of 1974, the Supreme Court denied plaintiffs' petition for certiorari seeking review of this Court's decision approving "Plan Z," a desegregation plan proposed by the Board. With that action, this case entered another period of temporary repose, with an effective desegregation plan finally in operation. Soon after, the plaintiffs filed their application for attorneys' fees and costs, after being unable to reach any settlement with the defendants. This first application was initially based upon 20 U.S.C. § 1617, the Emergency School Aid Act, which had become effective July 1, 1972. Not until November 4, 1977, did the district court enter its final order partially granting the plaintiffs' request. This appeal was taken by the plaintiffs from that award, and the defendants have both cross-appealed.

In the meantime, a new controversy had flared up, when the School Board sought substantial modification of Plan Z which would have slowed down and undermined the progress of desegregation. A five-day trial was held in 1977, and the defendant's proposals were, for the most part, rejected by the court. In 1978, the district court awarded attorneys' fees to the plaintiff to cover the services rendered in connection with the 1977 hearing, but again, only partially granted the plaintiffs' request for fees and costs. The plaintiffs also filed an appeal from that award, and the two appeals have been consolidated for resolution in this opinion, as they raise many of the same issues.

## II. THE RULINGS OF THE DISTRICT COURT

**A. The 1977 Fee Award:** In their first application for fees, the plaintiffs requested compensation for all documented hours spent on the case since it was first filed in 1960. They argue that they are entitled to fees for services rendered before the Emergency School Aid Act was passed since in *Bradley v. Richmond School Board*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), the Supreme Court held that the normal rule that a newly enacted statute will apply to all pending cases meant that an award for services rendered before 1972 could be made so long as the case was pending when the statute was enacted.

The district court rejected this position, ruling that *Bradley* only applied when there was an application for *fees* pending on the date the act became effective; otherwise, the statute only authorized fees from the date of its passage. Since no application for fees was pending in 1972, it held that the plaintiffs could not recover fees based upon the Act for the period prior to 1972. However, the Court also held that the defendant's conduct between 1968 and 1972, after the decision in *Green*, had been "obstinate and obdurate" in refusing to recognize its duty to devise an effective desegregation plan. Therefore, under its common-

law equitable powers, the Court awarded limited fees for that period.

The Court went on to hold that in the pre-1968 period, the state of the law was so uncertain that the defendant's conduct in resisting desegregation could not be considered to have been in bad faith. For the same reason, the court commented in *dicta* that even if it was wrong about the retroactivity of § 1617, this same uncertainty about the requirements of the law would render any award of attorneys' fees unjust, under the limitation which the Supreme Court had established in *Northcross v. Bd. of Education of Memphis City Schools*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973), holding that an award of fees pursuant to § 1617 should be routinely granted to a prevailing plaintiff unless unusual circumstances would render such an award unjust. The court also held that the City of Mem-

phis was liable for attorneys' fees for the services rendered in opposition to the City's attempt to block desegregation.

A separate hearing was conducted to determine the amount of fees to be awarded pursuant to this ruling establishing the plaintiffs' entitlement to fees. In the meantime, the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, was passed, and the plaintiffs moved for reconsideration of their petition pursuant to the new Act. The court ruled that the new Act did not apply because a final order had been entered in the case in 1974, prior to passage of the Act.

The plaintiffs total request for fees under the 1977 Fee Award is set out in chart form below; with the services devoted to challenging the City's actions in parentheses:

| Attorney | Hours | Hourly Rate | Base Fee | Adjustment Factor | Award |
|---|---|---|---|---|---|
| Lucas | 1375 (89) | $ 75 | $103,125 (6,675) | 2.5 | $257,812.50 (16,687.50) |
| Caldwell | 1706 (163) | 60 | 102,360 (9,780) | 2.5 | 255,900.00 (24,450.00) |
| Noel | 46 (33) | 50 | 2,300 (1,650) | 2.5 | 5,750.00 (4,125.00) |
| Pre-1968 Memphis Counsel | 672 | 75 | 50,400 | 2.5 | 126,000.00 |
| Chachkin | 829 (22) | 100 | 82,900 (2,200) | 2.5 | 207,250.00 (5,500.00) |
| Pre-1968 New York Counsel | 211 | 100 | 21,100 | 2.5 | 52,750.00 |
| Total | 4839 (307) | | $362,185 (20,305) | 2.5 | $905,462.50 (50,762.50) |
| | | | EXPENSES: | | $32,168.72 (477.01) |
| | | | TOTAL AWARD: | | $937,631.22 (51,239.51) |
| | | | | | $988,870.73 |

As mentioned above, the court ruled that the plaintiffs were entitled to no compensation at all for the pre-1968 services. For the services rendered between 1968 and 1972, the court stated, without explanation, that the "necessary services" rendered by plaintiffs' counsel added up to 816 hours. This ruling eliminated, without any articulated reason, 347 documented hours of service provided by plaintiffs' counsel. The

court went on to rule that the defendant's "obstinate and obdurate" conduct had caused the expenditure of one-half of this time. Thus, the plaintiffs were entitled to compensation for 408 hours of attorney time for services rendered between 1968 and 1972.

After 1972, the Emergency School Aid Act clearly authorized an award of attorneys' fees to the prevailing plaintiff for all "necessary" services. The district court concluded that necessary meant services provided in pursuing issues and arguments as to which the plaintiffs prevailed. Since the plaintiffs had sought a more comprehensive desegregation plan than was ultimately adopted, the court held that to a certain extent, the plaintiffs had not prevailed, and their attorney's services were not necessary. To account for this factor, the Court cut the plaintiffs' attorneys' documented time by half. In addition, without any explanation, the court simply eliminated 561.5 hours of documented time. This left a total of 120 hours of attorney time, for which the court concluded the plaintiffs were entitled to be compensated. The court furthermore excluded altogether the services of the NAACP Legal Defense Fund attorney, stating that "there has been no showing that his services were necessary in addition to the services of local counsel."

For the approved hours, the court awarded hourly fees of $60 for lead counsel Lucas, and $40 for some of attorney Caldwell's services, $60 for the remainder. The total fee awarded against the School Board for (at that time) fifteen years of service in the interest of the plaintiffs' civil rights was $28,600. The plaintiffs had sought the normal billing rates of their attorneys, which ranged from $50 to $100 per hour, adjusted upward by a factor of 2.5, to account for the various factors which have been held in similar cases to warrant a higher-than-normal fee.

In the same order, the district court granted fees against the City of Memphis to compensate the plaintiffs for the costs they incurred in opposing the City's attempt to block busing. However, it disallowed the fees claimed for the services of the Legal Defense Fund lawyer, and eliminated all the hours devoted to the fees issue and to the anti-trust/civil rights conspiracy charge which the plaintiffs had filed against the City but which was dismissed when the City agreed to supply the necessary gasoline.

Finally, as to costs, the court awarded only part of the plaintiffs' request for out-of-pocket expenses. It denied all costs incurred prior to 1971, apparently concluding (although without discussion) that if there was no statutory authorization for attorney's fees, costs were not recoverable either. It also denied over $5000 in expert witness fees and expenses, over $3000 for transcripts, nearly $2000 for attorney's travel expenses and over $800 in photocopying costs.

**B. The 1978 Fee Award:** The 1978 award, concerned only with services rendered during the 1977 hearings on the Board's proposed amendments to the desegregation plan, did not involve the difficult legal issue of retroactivity. The Civil Rights Attorney's Fees Act had been passed and was in effect at the time the services were rendered. The plaintiffs' lawyers submitted affidavits supporting their request for the following award of fees and expenses:

| | | |
|---|---|---|
| Elijah Noel, Jr. | 81.75 hrs. x $ 60.00 per hour | $ 4,905.00 |
| Louis R. Lucas | 61.5 hrs. x $125.00 per hour | 7,687.50 |
| Richard B. Fields | 128 hrs. x $ 40.00 per hour | 5,120.00 |
| Incentive award of 100% | | 17,712.50 |
| Out-of-pocket expenses | | 7,788.96 |
| | TOTAL | $43,213.96 |

(This chart has corrected the mathematical errors in the plaintiffs' first submission to the district court.)

The court held, however, that because the plaintiffs had only "partially prevailed," and had not prevailed as to "parts of some issues," the time claimed would be reduced by 20% to eliminate the hours spent on matters as to which the plaintiffs did not prevail. The court also found that the attorneys' hourly rates were excessive, noting that it had only awarded them $60 per hour for lead counsel and $40 per hour for assistant counsel in the 1977 award. The court awarded Lucas $75 per hour, Noel $60 per hour, and Fields $40 per hour, noting that

the experience of the attorneys was the determining factor in setting the different rates.

The court further held that the use of three attorneys had caused the duplication of some work, and excluded, without further explanation, 74 hours of time documented by the attorneys. The court also held that no "incentive" or "bonus" factor was authorized to increase the amount of the award.

Finally, the court awarded the plaintiffs only a portion of their claimed out-of-pocket expenses. It cut in half their expenditures for an expert witness, the salaries of student assistants in connection with the preparation of a pupil-locator map, and for photocopying.

We conclude that both orders granting attorneys' fees and expenses provide inadequate compensation, contain legal errors, and reach factual conclusions not supported by the record. The 1977 Fee Award must be remanded for further proceedings in accordance with the standards set out in this opinion. The record as to the 1978 Fee Award is adequate, however, for us to independently assess an appropriate award, see *Weisenberger v. Huecker*, 593 F.2d 49 (6th Cir. 1979), and we do so to demonstrate the findings and conclusions which we hold that district courts must enter in the record in making fee awards. We understand that the findings of fact which are required to substantiate a court's exercise of its discretion in making a fee award are frequently very complicated. Nevertheless, both the court's findings and its mode of analysis must be clear to enable an appellate court to intelligently review the award. The plaintiffs are entitled to some explanation of the reasoning used to exclude those hours which were cut, and some description of the findings which were relied upon to find that expenses and billing rates were excessive. Any review of the court's awards in this case would require substantial amounts of sheer conjecture on our part, as we speculate as to reasons why the court might have cut certain documented hours. In fact, it is impossible to tell whether the district judge might not have simply overlooked certain services provided by plaintiffs' attorneys. Certainly no more substantial reason appears in this record.

## III. THE CIVIL RIGHTS ATTORNEY'S FEES AWARDS ACT OF 1976

■ In this opinion, we will discuss only the 1976 Act. We see no substantial differences between the provisions or purposes of that Act and the Emergency School Aid Act, and contrary to the conclusion of the district court, hold that the 1976 Act was clearly applicable to both fee awards because the case was "pending" at the time it was passed. *Bradley, supra*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476; S.Rep.No.94–1011, 94th Congress, 2d Sess. (June 29, 1976), U.S.Code Cong. & Admin.News 1976, p. 5908.

■ We begin our discussion of this statute by pointing out that in making fee awards in civil rights cases today, courts are no longer applying their historical equitable powers to devise an adequate remedy. That power was sharply limited in *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which rejected any inherent equitable power of the courts to award fees when the plaintiffs were functioning as private attorneys general, and ruled that any authorization for fees in such situations would have to come from Congress. Congress responded, enacting the Civil Rights Attorney's Fees Awards Act expressly to fill the void left by *Alyeska*. This statute did more than simply enable the lower courts once again to award fees; rather than being an equitable remedy, flexibly applied in those circumstances which the *court* considers appropriate, it is now a *statutory* remedy, and the courts are obligated to apply the standards and guidelines provided by the legislature in making an award of fees. Therefore, a close examination both of the statute itself and its legislative history is necessary before we turn to a discussion of the particular legal issues raised by this case.

▆ The Civil Rights Attorney's Fees Awards Act of 1976, amending 42 U.S.C. § 1988, provides in relevant part:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, title IX of Public Law 92–318, or in any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code, or title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

This amendment was the Senate version of the bill, and the relevant legislative history is found in the Senate Report No. 94–1011, reprinted in 1976 U.S.Code Cong. & Admin. News p. 5908. Congress expressly commands the courts to use the broadest and most effective remedies available to them to achieve the goals of the civil rights laws. The Report comments that in accordance with the law established under the 1964 Civil Rights Act, the prevailing party should "ordinarily recover an attorney's fees unless special circumstances would render such an award unjust." In accordance with the broad remedial purpose of the statute, parties may be considered to have prevailed when they have vindicated important rights through a consent judgment or without formally obtaining relief. Furthermore, Congress gave some express guidance as to the standards to be used by the courts in the mechanical calculation of the amount of fees to be awarded. The amount of fees is to be governed "by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases." Congress mandates that the fact that the rights involved are nonpecuniary is not a matter for us to consider in making an award. Particularly important to this case is the instruction that counsel for the prevailing party should be paid, "as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." The goal to be achieved, according to the Senate Report, is to make an award of fees which is "adequate to attract competent counsel, but which do not produce windfalls to attorneys."

As we noted in *Seals v. Quarterly County Court,* 562 F.2d 390, 394 (6th Cir. 1977), section 1988 is a rare statute with sufficient legislative history to provide

> [A] clear-cut indication that Congress considered [many of] the exact problem[s] with which we are now confronted and provided an express indication as to how the general language of the 1976 statute was intended to be applied. Under such a circumstance (relatively rare in this court's experience), we, of course, follow Congressional intent.

With these instructions from Congress in mind, we turn to a review of the district court's two fee awards in this case.

## IV. THE 1977 AWARD

▆ **A. Retroactivity of the Fees Awards Act:** This issue has been firmly resolved by this Court. The Fees Awards Act applies to any case which is pending or which had not been finally resolved prior to its passage. This is not a matter of "retroactivity," it is simply an application of the traditional rule that a court applies the law which is in existence at the time it renders its opinion, unless there is statutory history to the contrary or doing so would result in manifest injustice.

▆ This Court has already ruled that § 1988 authorizes compensation for services rendered prior to its enactment, and both Supreme Court authority and clear legislative history support our conclusion. In *Weisenberger v. Huecker, supra,* 593 F.2d 49, the merits of the case were resolved well before passage of the Act, but the application for attorneys' fees had not been resolved when the Act became effective. This Court held that "[s]ince the Act was in existence at the time the district court made the fee awards, it is applicable to the instant cases." *Id.* at 53. The legislative history expressly states that the statute is intended to apply to all "pending" cases,

and "pending" means that all the issues in the case have not been finally resolved. So long as there was an active controversy in the case at the time the Act became effective, the Act applies to authorize fees for the entire case, unless special circumstances exist which would make an award manifestly unjust. The posture of this case at the time the award was made was indistinguishable from that in *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In *Bradley,* the Supreme Court was faced with another protracted school desegregation case. Relying on its equitable powers, the district court had awarded fees for services performed during the year prior to the passage of the Emergency School Aid Act. While the award was on appeal, the Act became effective. The Court of Appeals held, however, that only services rendered after the effective date of the Act were compensable. The Supreme Court reversed, applying the principle that "a court is to apply the law in effect at the time it renders its decision unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Id.* at 711, 94 S.Ct. at 2016.

In this case, plaintiffs filed their application for fees in 1974, relying upon the Emergency School Aid Act and the district court's equitable powers. In 1976, while the issue was still pending before the district court, the Civil Rights Attorney's Fees Awards Act was passed. The district court erred in refusing to apply the new statute to the pending application for fees. The situation is indistinguishable from *Bradley,* and the court had the benefit of an express instruction from Congress that the new statute was to apply to all pending cases. *See* Sen.Rep. No. 94–1011, *supra.*

After concluding that the "lack of specific guidelines and the resulting trial and error experimentation" in school desegregation cases prior to 1968 when the Supreme Court decided *Green* precluded an equitable award of fees based on the defendant's bad faith in the conduct of the suit, the district court went on to comment, in *dicta,* that even if it was wrong about the retroactivity

of the attorney's fees statutes, the *same* considerations, coupled with the plaintiffs' failure to request fees at an earlier date, precluded a statutory award of fees. The district court stated that, in its opinion, these factors amounted to special circumstances which would render an award of fees manifestly unjust. We disagree.

We have the benefit of a Supreme Court decision discussing the "special circumstances" which would be necessary to defeat a statutory fee award. *Bradley, supra,* 416 U.S. at 716, 94 S.Ct. 2006, explored aspects of this special judicial limitation on the statute. It noted that such "injustice" was particularly likely in a private suit between two parties. The factors to be considered were "(a) the nature and identity of the parties, (b) the nature of their rights, and (c) the nature of the impact of the change in law upon those rights." *Id.* at 717, 94 S.Ct. at 2019. The Court pointed out that plaintiffs in school desegregation cases were "private attorneys general" operating at a tremendous disadvantage to the defendants in terms of finances and resources. These cases are a matter of "great national concern," and are not mere differences between private individuals. Also, in an attorney's fee issue, a change in the law has no effect on any party's "right that has matured or become unconditional." *Id.* at 720, 94 S.Ct. at 2020. Finally, no additional or unforeseeable obligation is being imposed upon the defendants because attorney's fees may ultimately have been awarded against them based on the court's equitable power; the new statute "merely serves to create an additional basis or source for the Board's potential obligation to pay attorney's fees." *Id.* at 721, 94 S.Ct. at 2021.

Once again, we find the factors in *Bradley* to be indistinguishable from those here. This case is also a school desegregation case involving great disparity between the resources of the parties. The new statute affects no vested or matured rights of the defendant. Finally, the statute simply confirms the possibility of an award of attorney's fees; not only was there always the possibility that the court would invoke its

equitable powers to award fees, but it in fact did so, finding as a fact that the School Board had engaged in "obstinate and obdurate" behavior during at least a portion of this case.

■ Thus the district court was incorrect in its ruling that it had no statutory authority to award fees for services rendered prior to 1972, and the case must be remanded for a determination of a reasonable fee for that period. The fee awarded should cover at least the period back to 1968 when the suit became active again following the Supreme Court's *Green* decision.

■ This is not to say that a retroactive award of attorney's fees must be made in all school desegregation cases. Certain interim aspects of the case may have been subject to a final order settling the issue of attorney's fees to that point, rendering the reopening of long-settled aspects of the case unfair. In some circumstances, it would be unfair to award fees against defendants who entered the suit principally as amici curiae to give the court another perspective on the issues involved. *See Wilderness Society v. Morton,* 161 U.S.App.D.C. 446, 495 F.2d 1026 (D.C. Cir. 1974), *reversed on other grounds,* 321 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). However, we reject the notion that mere uncertainty in the law is a "special circumstance" justifying rejection of the statutory remedy. A major purpose of the Fees Awards Act was to encourage the bringing of suits in new and undeveloped areas of civil rights law, and it would be anomalous indeed if we were to deny fees for the very reason the statute was passed. Finally, the plaintiffs' delay in applying for fees (which was largely due to the fact that there was no earlier appropriate time to pause for litigation of the fee issue, at least not since 1966) is hardly grounds for denying fees. The defendants have failed to point to any prejudice or harmful effects on them as a result of the plaintiffs' delay. The prejudice, if any, has inured to the plaintiffs' attorneys who have provided years of service without compensation in hand. This is not a case where, years after a case has been finally disposed

of, the prevailing party seeks to reopen the case to litigate the fee issue. *Cf. United States v. Pinto,* 44 F.R.D. 357 (W.D.Mich. 1968).

■ There is an unresolved dispute concerning the pre-1968 period, which we leave to the district court to resolve. The School Board contended below that the district court action of July 29, 1966, the last action before the Supreme Court's *Green* decision, was a "consent order" which undertook to dispose of all outstanding phases of the case, including fees and costs. It is true that a long, complicated case of this sort can result in several "final" orders, which in the interests of finality are deemed to dispose of all foregoing issues. Absent a timely appeal, a party is bound by the order and any later challenge is deemed to be a collateral attack judged by different, and more stringent standards than on direct review. *Bradley, supra,* 416 U.S. at 710–11, 94 S.Ct. 2006. If the defendants are correct in their characterization of the 1966 action in the interest of finality, plaintiffs should not be permitted to reopen that judgment in order to obtain attorneys' fees. We leave this matter to the district court. However, from 1968 until shortly before the application for fees was made by the plaintiffs, the case was in continuous, active litigation. Not only was there no "final judgment" which could reasonably be said to settle the issue of fees during that period, but there was no time to raise the matter of fees at all.

■ **B. The Prevailing Party Problem:** This legal issue is common to both awards. The district court concluded that the plaintiffs were the "prevailing party," thus entitling them to fees under the statutes. However, it then concluded that those fees could be cut because the plaintiffs had *not* prevailed on some "issues or parts of issues." In the first award, the district court cut the plaintiffs' attorneys' hours by half to account for this factor, and in the second award, reduced the award by 20 per cent.

This approach is not proper under the Fees Awards Act. The question as to whether the plaintiffs have prevailed is a preliminary determination, necessary before the statute comes into play at all. Once that issue is determined in the plaintiffs' favor, they are entitled to recover attorneys' fees for "all time reasonably spent on a matter." The fact that some of that time was spent in pursuing issues on research which was ultimately unproductive, rejected by the court, or mooted by intervening events is wholly irrelevant. So long as the party has prevailed on the case as a whole the district courts are to allow compensation for hours expended on unsuccessful research or litigation, unless the positions asserted are frivolous or in bad faith. There are numerous practical reasons why a court may not be permitted to dissect a lawsuit into "issues and parts of issues as to which the plaintiffs did not prevail," especially by decimating the total hours claimed with arbitrary percentages. Suffice it to say, however, that Congress has mandated that a prevailing party's attorney should be compensated "as is traditional with attorneys compensated by a fee-paying client, for all time reasonably expended on a matter." We know of no "traditional" method of billing whereby an attorney offers a discount based upon his or her failure to prevail on "issues or parts of issues." Furthermore, it would hardly further our mandate to use the "broadest and most flexible remedies available" to us to enforce the civil rights laws if we were so directly to discourage innovative and vigorous lawyering in a changing area of the law. That mandate is best served by encouraging attorneys to take the most advantageous position on their clients' behalf that is possible in good faith. The fact that these lawyers advocated a desegregation remedy of broader scope and faster pace than was ultimately adopted cannot be considered to be unreasonable. Their clients have prevailed; the Memphis school system is desegregated.

The district court also cut certain hours from the plaintiffs' request against the City of Memphis, primarily those hours spent on the suit which had been filed against the city but which was dismissed when the City agreed to supply adequate gasoline to the School Board. In spite of the lack of a formal order, the plaintiffs still obtained the relief which they sought, and are entitled to compensation. As noted in the Senate Report, prompt and reasonable settlement is to be encouraged, and thus the notion of "prevailing party" is to be interpreted in a practical, not formal, manner.

**C. The Calculation of a "Reasonable Fee":** This Court has been disturbed by the extraordinary variations in fee awards that have come before it on review, and by a marked failure on the part of the district courts to explain their reasoning, make necessary findings of fact, or demonstrate the calculations used to arrive at a fee. Such awards may well constitute an abuse of discretion while rendering the award virtually unreviewable. We therefore conclude that a uniform approach to awarding fees, with a requirement that the district court make clear and adequate findings of fact on the record, is necessary in order that we may discharge our statutory duty to award a "reasonable" fee. That which is arbitrary or conclusory is not reasonable, and is not fair to either of the parties involved.

**i. Hours of service provided:** We conclude that a fee calculated in terms of hours of service provided is the fairest and most manageable approach. The district court should indicate on the record the number of hours it finds the plaintiffs' attorneys have expended on the case. This finding must first take into account the affidavits of counsel. The hours claimed need not be automatically accepted by the district court, but to the extent that hours are rejected, the court must indicate some reason for its action, so that we may determine whether the court properly exercised its discretion or made an error of law in its conclusion. Hours may be cut for duplication, padding or frivolous claims. In complicated cases, involving many lawyers, we have approved the arbitrary but essentially

fair approach of simply deducting a small percentage of the total hours to eliminate duplication of services. *Oliver v. Kalamazoo Bd. of Educ.,* 576 F.2d 714 (6th Cir. 1978). Such an approach seems preferable to an attempt to pick out, here and there, the hours which were duplicative.

 Beyond this allowance for duplicative services, however, we hold that if a district court decides to eliminate hours of service adequately documented by the attorneys, it must identify those hours and articulate its reasons for their elimination. The district court's failure to do so in this case renders its award virtually unreviewable. It has simply eliminated, without comment, hundreds of hours of documented service. The 1977 Award must therefore be remanded for entry of findings of fact and conclusions of law adequate to permit our review of the award. *Monroe v. Bd. of Comm'rs of Jackson,* 505 F.2d 105, 109 (6th Cir. 1974). To the extent that the district courts' unspoken assumptions about awards of attorneys' fees are inconsistent with this opinion, the award should be recalculated.

 The plaintiffs have attempted, largely by guesswork, to identify which hours of service in the 1977 Award were excluded from consideration. While this Court does not render advisory opinions, it appears that many of the hours were excluded for improper reasons. Therefore, we review a few established principles of law, for the benefit of the district court on remand. While necessary services performed by attorneys which could reasonably have been performed by less expensive personnel may be compensated at a lower rate than an attorney's normal billing rate, they should not be excluded altogether. Services relating to the various appeals taken in this case are compensable, and the district court, with its greater facility for evidentiary hearings and fact-finding, should make awards for appellate services in the first instance, subject to our review. *Weisenberger v. Huecker, supra,* 593 F.2d 49, *Perkins v. Standard Oil Co. of Calif.,* 399 U.S. 222, 90 S.Ct. 1989, 26 L.Ed.2d 534 (1970). Services devoted to reasonable monitoring of the court's decrees, both to insure full compliance and to ensure that the plan is indeed working to desegregate the school system, are compensable services. They are essential to the long-term success of the plaintiff's suit. While we express no opinion as to whether *prospective* fees may be awarded to cover anticipated monitoring services, as was done in *Lindy Bros. Builders, Inc. v. American Radiator & Stand. Sanitary Corp.,* 540 F.2d 102, 121 (3d Cir. 1976) (en banc), it is clear that if such services have already been rendered, they should be compensated. *Pete v. U. M. W. Welfare & Retirement Fund of 1950,* 171 U.S.App.D.C. 1, 17, 517 F.2d 1275, 1291 (D.C. Cir. 1975). Finally, this Court has recently held that in order to effectuate the purposes of the Civil Rights Attorney's Fees Awards Act, the plaintiffs should recover attorneys' fees for the time spent litigating the fees issue itself. *Weisenberger, supra,* 593 F.2d 49.

 A factor which the district court did expressly take into account in eliminating hours was its view that the services of the NAACP Legal Defense Fund had not been shown to be necessary. As noted above, the use of a number of attorneys frequently results in some duplication of effort, and a district court may take this factor into account by deducting some small percentage of the total hours. It is impermissible, however, to eliminate wholesale the services of attorneys without identifying the particular services which are regarded as duplicative. The NAACP attorneys provided the plaintiffs with many hours of service which were not provided by anyone else, particularly in connection with litigation in this Court and the Supreme Court. The services provided by the Legal Defense Fund clearly had to be provided by someone, and in fact, the attorneys' intimate familiarity with the issues involved in desegregation litigation undoubtedly meant that their time was far more productive in this area than would be that of a local attorney with less expertise. We hold that the district court's exclusion of the services of the Legal Defense Fund from consideration for a fee award was an abuse of discretion.

ii. **A reasonable hourly rate:** We have indicated in several opinions that it is desirable, whenever possible, to vary the hourly rate awarded depending upon the type of service being provided. Again turning to our mandate to award fees "as is traditional with attorneys compensated by a fee-paying client," a scale of fees as is used by most law firms is appropriate to use in making fee awards pursuant to Section 1988. The use of broad categories, differentiating between paralegal services, in-office services by experienced attorneys and trial service, would result in a fair and equitable fee.

■ In determining what the level of compensation for each category of service should be, the court should look to the fair market value of the services provided. In most communities, the marketplace has set a value for the services of attorneys, and the hourly rate charged by an attorney for his or her services will normally reflect the training, background, experience and skill of the individual attorney. For those attorneys who have no private practice, the rates customarily charged in the community for similar services can be looked to for guidance.

■ Focussing on the fair market value of the attorney's services will best fulfill the purposes of the Fees Awards Act, by providing adequate compensation to attract qualified and competent attorneys without affording any windfall to those who undertake such representation. The entire purpose of the statutes was to ensure that the representation of important national concerns would not depend upon the charitable instincts of a few generous attorneys.

■ For the same reason, as we established in *Oliver v. Kalamazoo Bd. of Educ.*, 576 F.2d 714 (6th Cir. 1978), a "bonus" multiplier, awarded "to compensate the attorneys for vindicating important but often unpopular constitutional rights", *id.*, at 715, is not authorized by either the Emergency School Aid Act or by Section 1988. Such a "bonus" would indeed be a "windfall," un-

necessary to attract competent counsel, and grossly unfair to the defendants, who in most cases will be paying the award out of public funds. We see no reason to allow individual attorneys, no matter how important the rights they have vindicated, to receive unearned personal gain at the public expense.

■ This does not mean that the routine hourly rate charged by attorneys is the maximum which can or should be awarded. In many cases that rate is not "reasonable," because it does not take into account special circumstances, such as unusual time constraint, or an unusually unpopular cause, which affect the market value of the services rendered. Perhaps the most significant factor in these cases which at times renders the routine hourly fee unreasonably low is the fact that the award is contingent upon success. An attorney's regular hourly billing is based upon an expectation of payment, win, lose or draw. If he or she will only be paid in the event of victory, those rates will be adjusted upward to compensate for the risk the attorney is accepting of not being paid at all. Some cases under the civil rights statutes, those in which the facts are strong and the law clear, pose little risk of losing, and the attorney's normal billing rate will be adequate compensation. Others, in developing areas of law or where the facts are strongly disputed, will require a substantial upward adjustment to compensate for the risk. We also note that in a long and complicated lawsuit such as this one, only a portion of the time expended can be reasonably regarded as contingent; once liability is established the attorney is assured of compensation for establishing the appropriate remedy, monitoring the decree, and recovering his fee. The contingency factor is not a "bonus" but is part of the reasonable compensation to which a prevailing party's attorney is entitled under § 1988.

The dissent argues that "it is not proper to treat the allowance of plaintiff's attorneys fees in such cases on a contingency fees basis since, with rare exceptions, the plaintiffs have prevailed in practically ev-

ery school desegregation case which they have instituted." It is quite accurate to state that history now establishes that the plaintiffs have prevailed in virtually all past desegregation cases, and for sake of argument, that future plaintiffs may similarly be virtually assured in advance of success. However, that situation did not prevail during the early days of the present litigation, when most of the services at issue were performed. In holding that the contingency of compensation is a proper factor for consideration in determining reasonable payment for those services, we of course do not lay down a standard for guidance in situations where the fact of payment has never been in doubt.

██ iii. **Costs & expenses:** The plaintiffs have also challenged the district court's award of statutory costs and out-of-pocket expenses. The district court did not explain its award of costs, but simply itemized those costs which it was granting. It excluded all pre-1971 costs, apparently assuming that if attorney's fees were not recoverable, neither were costs. Fed.R. Civ.P. 54(d) has long provided, however, that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Plaintiffs in this case are the prevailing party, and we can see no reason to deny them their costs. The district court was in error in fixing 1971 as the cutoff date for the award of the costs.

Because of these errors, the entire award of costs and expenses must be recalculated. The plaintiffs have also challenged the award made for costs after 1971, however. The district court denied over $11,500 in costs, again without any explanation as to its reasons, and we thus must remand for adequate findings of fact and conclusions of law. However, it eliminated costs in four major categories, providing some basis for review so that we may provide guidance for the district court on remand. Those four categories were expert witness fees, transcript costs, counsels' travel expenses and photocopying.

██ There are two separate sources of authority to award out-of-pocket expenses.

Some expenses are included in the concept of attorney's fees, as "incidental and necessary expenses incurred in furnishing effective and competent representation," and thus are authorized by section 1988. *See* remarks of Congressman Drinan, 122 Cong. Rec. H12160 (daily ed. 1 Oct. 1976), *Beazer v. New York City Transit Authority,* 558 F.2d 97 (2d Cir. 1977), *rev'd on other grounds,* 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979). The authority granted in section 1988 to award a "reasonable attorney's fee" included the authority to award those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services. Reasonable photocopying, paralegal expenses, and travel and telephone costs are thus recoverable pursuant to the statutory authority of § 1988.

██ Other costs are on a different footing. These include those costs incurred by a party to be paid to a third party, not the attorney for the case, which cannot reasonably be considered to be attorney's fees. *See Wheeler v. Durham Bd. of Educ.,* 585 F.2d 618 (4th Cir. 1978). These include, among others, docket fees, investigation expenses, deposition expenses, witness expenses, and the costs of charts and maps. Most of these expenses have long been recoverable, in the court's discretion as costs, pursuant to 28 U.S.C. § 1920, which provides:

§ 1920. Taxation of costs

A judge or clerk of any court of the United States *may* tax as costs the following:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title.

Rule 39(e), Fed.R.App.P. also provides for the taxing of similar costs incurred on appeal, and there are other statutes and rules which may be relevant in a particular case.

▮ The standards for the awarding of such taxable costs are well-settled and need not be repeated here. Suffice it to reemphasize that the authorization for the allowance of such costs is not related to the separate authorization for attorney's fees provided in section 1988. We have a mandate from Congress that § 1988 is to be liberally construed to achieve the public purpose underlying the Act, *Seals v. Quarterly County Court, supra,* 562 F.2d at 393, and we will therefore closely review an award of attorney's fees under that section in order to assure that its purpose is fulfilled. However, the plaintiffs are in the same posture as the prevailing party in any other case with regard to costs which are not part of attorneys' fees. The award of statutory costs is a matter for the district court, in its best judgment as to what was reasonable and necessary, and the appellate courts will not normally interfere with the exercise of that discretion. *Fey v. Walston & Co.,* 493 F.2d 1036 (7th Cir. 1974). It would be advisable for litigants to obtain authorization from the district court before incurring large items of expense; though, of course, failure to do so does not bar reimbursement if the trial court should decide that the expenditures were nevertheless reasonable and necessary.

## V. THE 1978 FEE AWARD

Because there has not been an adequate evidentiary hearing relating to the pre-1971 services and expenses, the 1977 award must be remanded for further proceedings, resolution of the question whether the 1966 judgment barred a later award of fees, and a complete recalculation in accordance with this opinion. Among other factors, the district court will be required to consider whether the inflation of the intervening years must be taken into account, or whether the lower rate which prevailed for services at the time they were rendered has been balanced by the long delay which will reduce the purchasing power of the award's dollars in the present marketplace. With regard to the 1978 award, we have a complete record and conclude that the interests of justice will be served, in light of the long delay in this case, by our recalculation of an appropriate award of fees and expenses for that period. *See Weisenberger, supra,* 593 F.2d at 54.

Before entering into a discussion of the amount of the fees to be awarded, and laying aside for the moment challenges which have been made concerning such issues as duplication of services, we first observe that with one possible exception there can be no question concerning the essential nature of the services at issue. The possible exception involves the award of attorney's fees against the City of Memphis for services rendered in an action against the city. As the district judge observed in his opinion, that action was "based upon the conduct of the Mayor or a majority of the members of the Council of the City of Memphis or both." District Judge McRae then went on to observe, "These matters required the Board [of Education of the Memphis City Schools] *and the plaintiffs* to seek injunctive relief in this cause against conduct that was designed to interfere with the desegregation plan ordered by this Court in accordance with the direction and rulings of the appellate courts." (Emphasis supplied.) This finding of fact is fully supported by the record and disposes of any suggestion that the services on this account were not essential, and Judge McRae subsequently commented, "[T]he attorneys for the plaintiffs did participate." Thus their entitlement to fees on this account is clearly demonstrated.

We have already established the fact that the plaintiffs are the prevailing party in this lawsuit; the Memphis schools are desegregated and the defendants did not succeed in their attempt to modify the plan in ways which would benefit white students at the expense of black students.

▮ **A. Reasonable Hours of Service:** The attorneys for the plaintiffs have documented a total of 271.25 hours of service

related to the five-day trial held in 1977. The district court disapproved, without specific findings, but apparently on grounds of unnecessary duplication of service, 74 hours. Not only is this cut unsupported in the record, but we conclude that it was clearly excessive given the facts of this case. Rather than attempt to pick out which hours of service were unnecessarily duplicative given the use of three attorneys, we elect to simply use a 5% reduction factor. There were only three attorneys involved in this aspect of the case, and a perusal of the hours billed demonstrates that there was little overlapping of service. Therefore the 10% reduction factor which we employed in *Weisenberger, supra,* 593 F.2d at 54 n.12, and approved in *Oliver,* 576 F.2d 714, would be excessive in this case. We have already held that it was improper for the district court to reduce compensation because the plaintiffs did not prevail on "parts of issues." We can see no reason to further reduce the hours of documented service provided by counsel for the plaintiffs, and defendants suggest none.

██ **B. A Reasonable Hourly Rate:** The attorneys for the plaintiffs have submitted their normal billing rates in affidavit form. Mr. Lucas normally charges $125 per hour for comparable "federal litigation," Mr. Noel charges $60 per hour, and Mr. Fields charges $40 per hour. These differences reflect the differences in experience among the attorneys.

The rates attested to were accepted by the district court and are not here challenged by the defendants, with the exception of Mr. Lucas's fee, which was cut to $75 per hour, apparently because it had awarded Mr. Lucas only $60 per hour the year before in connection with the 1977 award. We express no opinion as to the accuracy of the fee per hour awarded in the 1977 award, but do agree that Mr. Lucas's billing rate for "federal litigation" is high for office services. However, it is reasonable and supported both by the record and our own experience with fees charged by lawyers of his experience and legal stature for trial services. We therefore will calculate Mr. Lucas's fee under a bifurcated scale, using as base figures $125 per hour

for trial work and the $75 per hour which the district court found to be reasonable for office services. No challenge is raised to the hourly fee granted by the district court for the services of Mr. Noel and Mr. Fields, except to the extent that the district court failed to adjust their normal hourly rate upward to account for the contingency nature of the fee.

██ The hearings here involved were collateral to and distinct from the desegregation suit itself, which had been finally terminated in 1974, so had the plaintiffs failed to prevail on the merits the district court would have been justified in denying fees altogether. Therefore, there was a real element of contingency as to whether the attorneys would be compensated for their services at all. The contingency element, on the other hand, is somewhat reduced both by the admittedly small but assured financial support received from the Legal Defense Fund and by the fact that the School Board here was seeking to alter a final judgment of the district court which had been arrived at only after many years of bitter litigation. Given that the burden was on the Board, we do not believe that there was a very large chance that the plaintiffs would wholly fail to prevail. An upward adjustment of 10% in the regular billing rates would, we believe, serve the Congressional purpose of awarding sufficient compensation to attract competent counsel.

Therefore, Mr. Lucas will be awarded $137.50 per hour for his trial work, and $82.50 per hour for his in-office work. Mr. Noel will be compensated at a rate of $66 per hour for the time he devoted to this cause, and Mr. Fields will receive $44 per hour. The total compensation we award to the attorneys in this case is set out in chart form below:

| Mr. Lucas: | 32 | hrs. | (trial time) |
|---|---|---|---|
| less | 1.6 | hrs. | (5% duplication reduction) |
| | 30.4 | hrs. | |
| x | 137.50 | hrs. | (reasonable hourly rate) |
| | $4,180.00 | | |
| | 29.5 | hrs. | (office time) |
| less | 1.5 | hrs. | (5% duplication reduction) |
| | 28 | hrs. | |
| x | 82.50 | | (reasonable hourly rate) |
| | $2,310.00 | | |

Mr. Noel:
```
 81.75 hrs.
less 4.09 hrs. (5% duplication reduction)
 77.66 hrs.
x 66.00 (reasonable hourly rate)
 $5,125.56
```

Mr. Fields:
```
 128 hrs.
less 6.4 hrs. (5% duplication reduction)
 121.6 hrs.
x 44.00 (reasonable hourly rate)
 $5,544.00
```

■ **C. Costs and Out-of-Pocket Expenses:** In its ruling, the district court awarded the plaintiffs all of their expenses except that it cut the claimed expenses for an expert witness and for preparation of a student locator map by half, finding that these large expenses were incurred without prior approval of the court and were excessive. These items are recoverable, if at all, pursuant to the court's sound discretion under 28 U.S.C. § 1920. We will not disturb the conclusions of the district court on this matter.

The district court also reduced by half the duplicating expenses claimed by the plaintiffs' attorneys. These fees are recoverable under 42 U.S.C. § 1988 as a part of attorneys' fees, and are subject to closer review by this court. We believe that the plaintiffs have demonstrated that their duplicating expenses were reasonable in view of the large number of documents involved in this hearing. We are mindful of the frequent admonitions received by counsel in this Circuit, both from this Court and trial judges, to ensure that they are prepared with adequate numbers of copies of all relevant documents for the lawyers and judges involved, so that our time, which is far more valuable than the 10¢ a page that it costs to photocopy a document, is not wasted by unnecessary delay. We do not believe that we should second-guess the attorneys' decision that four copies (for their own use, the use of witnesses and for the court) was necessary in order to efficiently and competently try this case. The district judge allowed a total of $5,200.16 in costs and out-of-pocket expenses. We add $244.30 in additional reasonable copying expenses, for a total of $5,444.46.

## VI. CONCLUSION

Many courts have used the "list of factors for consideration" approach first suggested by the Fifth Circuit in its oft-cited decision, *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and relied on by this Court in *Monroe v. County Bd. of Educ.*, 505 F.2d 109 (6th Cir. 1974). The court in *Johnson* listed twelve factors which it held should be considered in determining reasonable attorney's fees:

1) the time and labor required;

2) the novelty and difficulty of the questions;

3) the skill requisite to perform the legal service properly;

4) the preclusion of other employment by the attorney due to acceptance of the case;

5) the customary fee;

6) whether the fee is fixed or contingent;

7) time limitations imposed by the client or the circumstances;

8) the amount involved and the results obtained;

9) the experience, reputation, and ability of the attorneys;

10) the "undesirability" of the case;

11) the nature and length of the professional relationship with the client; and

12) awards in similar cases.

*Id.* at 717–719. We have learned through experience, however, that merely providing a check list of factors to consider does not lead to consistent results, or, in many cases, reasonable fees. Many of the factors are overlapping, and there is no guidance as to the relative importance of each factor, or indeed, how they are to be applied in a given case. We conclude that an analytical approach, grounded in the number of hours expended on the case, will take into account all the relevant factors, and will lead to a reasonable result. The number of hours of work will automatically reflect the "time

and labor involved," "the novelty and difficulty of the question," and "preclusion of other employment." The attorney's normal hourly billing rate will reflect "the skill requisite to perform the legal service properly," "the customary fee," and the "experience, reputation and ability of the attorney." Adjustments upward may be made to reflect the contingency of the fee, unusual time limitations and the "undesirability" of the case. Thus, applying the approach used in this decision will result in an award reflecting those considerations traditionally looked to in making fee awards, but will also provide a logical, analytical framework which should largely eliminate arbitrary awards based solely on a judge's predispositions or instincts.

The 1977 Award is remanded to the district court for any necessary evidentiary proceedings, a resolution of the legal issue concerning the finality of the 1966 ruling, and a recalculation of attorneys' fees due to the plaintiffs for services rendered to them up until the final desegregation order was entered in 1974. The 1978 Award is remanded with instructions to the district court to enter judgment for plaintiffs in the amount of $22,604.02 to compensate them for services rendered by their attorneys and expenses incurred in 1977. The plaintiffs' attorneys are also entitled to be compensated for their time spent litigating this issue and pursuing this appeal, and we remand this case to the district court for a proper determination of a reasonable fee for those services.

WEICK, Circuit Judge, concurring and dissenting in part:

The issues in these appeals are very important. Whatever we establish as the law of this circuit may control or have a bearing on the allowance of attorneys fees, costs and expenses in a multitude of other school desegregation cases in Cleveland, Lorain, Akron, Youngstown, Columbus, Dayton, Cincinnati, Louisville and elsewhere.

In the present appeals, the plaintiff's final motion was for the allowance of $988,-870.73 for attorneys fees in which plaintiffs not only sought to recover what they claimed was the reasonable value of the legal services which were rendered but they multiplied the total value of such services by a factor of 2.5 as a bonus or incentive. We have previously disapproved of such a multiplier as unauthorized in *Oliver v. Kalamazoo Board of Education*, 576 F.2d 714 (6th Cir. 1978) where in a small school desegregation case involving about 17,000 school children the District Judge allowed $507,067 in attorneys fees plus $15,000 for volunteered paralegal services rendered by one of the plaintiffs.

It seems that in these cases it has not even been considered that the funds out of which the allowance are to be paid have been exacted from local taxpayers for the needed and ever increasing expenses of the operation of the public schools. The primary purpose of the public schools is for the education of children by school teachers.

In my opinion, it is not proper to treat the allowance of plaintiff's attorneys fees in such cases on a contingency fees basis since, with rare exceptions, the plaintiffs have prevailed in practically every school desegregation case which they instituted. School desegregation cases are not the type of cases where plaintiff's lawyers should reap a huge harvest. Nor should it be necessary for the plaintiffs in each case to be represented by a flock of lawyers. We should remember the old adage that too many cooks spoil the soup. It ought to be sufficient to have only local attorneys skilled in trying such cases and it ought not to be necessary to have additional nonresident attorneys. Where there are a number of lawyers handling a case for the plaintiffs, there is always the problem of duplication of the work. In such a case the trial judge who is familiar with the case may properly take this into account in the allowance of fees and appellate courts ought not to interfere. The trial judge also is in the best position to evaluate the reasonable time necessary for the lawyers to perform their duties and also the reasonable value of their services. The factual findings of the District Court in these matters in the present cases ought not

to be disturbed as they are not clearly erroneous. An allowance of $135.00 or more an hour for trial work in these cases is grossly excessive and it should never be allowed for mere office work performed by trial lawyers or their staffs or for time spent on the telephone or in traveling. Also any compensation received by a lawyer from a client should be credited on the fee bill which he applies to the court for allowance.

It must also be remembered that where the Board of Education is sued in a school desegregation case, it is entitled to due process of law and has every right to defend itself with its counsel like any other litigant. Ever since *Brown* was decided, the law has been developing and even now is not too clear as appears from separate opinions of the Justices of the Supreme Court recently in the Columbus and Dayton school cases.

Boards of Education in school desegregation cases are subjected to the expense of not only compensating their own lawyers for legal services and expenses rendered over a period of many years, but also in addition they are required to compensate the attorneys for the successful plaintiffs who have sued them to desegregate the schools. The plaintiff's attorneys in such cases are assessed against the Board under the Emergency School Aid Act, 20 U.S.C. § 1617, and the Civil Rights Attorney's Fees Awards Act of 1976. 42 U.S.C. § 1988. Thus the Boards of Education have double legal expenses in practically all cases.

A school desegregation case ought not to be treated as a receivership of the public school system. *Cf. State, Ex Rel. National City Bank v. Bd. of Education*, 52 Ohio St.2d 81, 369 N.E.2d 1200 (1977), citing in a footnote on pages 88, 89, 369 N.E.2d 1200, *National City Bank and The Cleveland Trust Co. v. Battisti, Chief Judge*, 581 F.2d 565 (C.A. 6, 1977).

The trial judge in the present case in his 1977 Fee Award which totaled $28,600 computed the allowance of the Memphis head counsel Lucas on the basis of $60.00 an hour, $40.00 an hour for some of Attorney Caldwell's services and $60.00 an hour for the remainder. Part of the legal services were performed many years ago before any of the enabling Acts were passed. He denied compensation to Norman Chachkin, New York attorney for NAACP Legal Defense Fund on the ground it was not shown that his services were necessary, in addition to the services of the Memphis trial lawyers. It does not appear that in so doing the District Court was clearly erroneous or abused its discretion.

In my opinion, the District Court was not obligated to allow compensation to any attorney for all the services which the attorney claimed to have rendered. The trial court familiar with the case could certainly take into account whether all of such services were reasonably necessary and whether the attorney prevailed wholly or in part. In my judgment, the factual findings of the District Court in making the awards were supported by substantial evidence and are not clearly erroneous. There was no abuse of discretion.

In my opinion, however, the District Court did err in allowing compensation to plaintiff's counsel for volunteered legal services rendered in three suits filed by the Board against the City of Memphis for alleged interference with desegregation orders of the court which led to the granting of an injunction by the District Court against the City and appeals to the court. The plaintiffs attorneys had filed a motion in the cases and supported the Board.

There was no claim made that the attorneys for the Board were incompetent or did not effectively represent their client in the three suits against the City of Memphis. The activity of the plaintiff's counsel in these cases was wholly voluntary and yet an award was made against the City for $6,930 not only for services rendered against the City but also for services rendered to secure their award of compensation.

I do not believe it is wrong for us to be conservative in the allowance of attorney's fees to be paid from public funds.