**Paulette P. TYLER, Plaintiff,**

v.

**BOARD OF EDUCATION OF the NEW CASTLE COUNTY VOCATIONAL-TECHNICAL SCHOOL DISTRICT, Defendant.**

**Civ. A. No. 80–279.**

United States District Court, D. Delaware.

Aug. 7, 1981.

Thomas Stephen Neuberger, Wilmington, Del., for plaintiff.

Robert D. Graham of Bayard, Brill & Handelman, Wilmington, Del., for defendant.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Following entry of judgment for plaintiff pursuant to a jury verdict, defendant filed a motion for judgment notwithstanding the verdict and, in the alternative, for a new trial or amendment of the judgment. Plaintiff in turn filed post-trial motions for equitable relief pursuant to a Title VII claim and for award of attorneys' fees and costs. For the reasons set out hereinafter, the Court declines to overturn the jury's verdict or order a new trial. However, in view of recent legal developments, the Court amends the judgment to strike the award of punitive damages. Further, the Court grants plaintiff's motion for equitable relief and for attorneys' fees and costs.

### A. Factual Background

Plaintiff filed a complaint in June, 1980, seeking relief pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, in connection with plaintiff's unsuccessful application for the position of Student Activity Coordinator at Howard Career Center. The complaint alleged that a male less qualified than plaintiff was selected for the position, and that plaintiff was denied the position because of her sex. The complaint was subsequently amended to allege that plaintiff was deprived of her Fourteenth Amendment right to procedural due process in the hiring process.

The case came to trial in February, 1981. At the conclusion of three days of testimony, the Court instructed the jury as to the intentional sex discrimination and procedural due process claims. Plaintiff sought punitive as well as compensatory damages, and the Court gave instructions concerning both. See Dkt. 63, D–16–19. In response to special interrogatories, see Dkt. 52, the jury found that defendant violated plaintiff's right to procedural due process and her right to equal protection of the laws. The jury awarded plaintiff compensatory damages in the amount of her lost wages, $7,430, and punitive damages in excess of $57,000.

### B. Motion for Judgment Notwithstanding The Verdict, New Trial, or Amendment of the Judgment

▮ Defendant made a timely motion for judgment notwithstanding the verdict, or in the alternative, for a new trial or amendment of the judgment. In order for the Court to grant a motion for judgment n. o. v., the evidence must be such that reasonable persons could not have reached the verdict returned by the jury. See, e. g., Ambrose v. Wheatly, 321 F.Supp. 1220, 1222 (D.Del.1971). The Court has broader discretion in ruling on a motion for a new trial. It can, for example, set aside a verdict on the ground that it is against the weight of

the evidence, or that it is excessive. *See* 6A *Moore's Federal Practice* ¶ 59.08, at 59–102 (2d ed. 1948).

■ Though the evidence offered at trial was far from clear and convincing, the Court holds that there is sufficient evidence in the record to support the jury's finding that defendant intentionally discriminated against plaintiff on the basis of sex. The parties stipulated that plaintiff had made out a *prima facie* case of intentional discrimination. Defendant's defense was that plaintiff was not hired because she was less qualified than the successful male applicant. Plaintiff therefore had the burden of proving, by a preponderance of the evidence, that the defense was simply a pretext for sex discrimination.

There is evidence in the record from which a jury could reasonably infer that a less qualified male was selected over plaintiff because of sex. The jury might have inferred from the testimony that John Pickett, the Howard Career Center principal, favored Joseph Facciolo, Howard's football coach, for the Student Activity Coordinator position and sought indirectly to influence the committee in Facciolo's favor. Moreover, the jury could have found that Leon Holden, a member of the three-person interview committee, asked plaintiff certain questions in the interview which suggested that he was biased against female candidates. *See* Dkt. 61, B–175; *id.* B–11. Though plaintiff was ranked third among four candidates by all members of the interview committee, the jury might reasonably have concluded that Holden's questions influenced the other committee members to give plaintiff a low ranking. Because a finding of intentional discrimination must often be based on circumstantial evidence, the Court is reluctant to overturn the jury's decision where there is some evidence that reasonably supports its finding. Therefore, in view of the evidence reviewed above, the Court declines to disturb the jury's verdict in favor of plaintiff on the claim of sex discrimination.

■ The crux of the procedural due process claim was whether defendant failed to follow its own procedures in filling the position of Student Activity Coordination at Howard, and if so, whether plaintiff was injured as a result. The jury could reasonably have found, on the basis of the testimony of Pickett and Donald James, the district director of guidance, that the interview committee departed from customary hiring procedures, such as use of a written job description and standard questions.

Whether the jury reasonably could have concluded that plaintiff would have been selected for the position had "proper" procedures been followed is a more difficult question. At trial, plaintiff strongly urged that she was clearly more qualified for the position than the male selected; that the interview committee selected Facciolo in part because it was mistakenly informed as to the responsibilities connected with the position; and that the committee's mistake as to job responsibilities was in part a result of the fact that there was no written job description for the position. The school district decided on August 15, 1979 to move job placement responsibilities to the district level, and remove those duties from Student Activity Coordinators at the school level. *See* Dkt. 60, A–42. It was not until twelve days later, on August 27, 1979 that the interview committee selected Facciolo for the Student Activity Coordinator position at Howard, on the assumption that his duties would include job placement. *See* PX–21. The jury might reasonably have inferred that a written job description would have corrected the committee members' erroneous understanding of the new Student Activity Coordinator's responsibilities, and would have led them to select plaintiff for the job, in view of her extensive background in student activities. Therefore, the Court will not overturn the jury's finding of a violation of procedural due process, and of damages resulting therefrom.

■ Turning to the issue of damages, defendant contends that plaintiff should not receive lost wages for extra-duty paid positions which the jury awarded as compensatory damages. Defendant argues

that, even had she been selected as Student Activity Coordinator, there was no guarantee she would have been selected for the extra-duty positions under the open interview procedure adopted by defendant in 1979. *See* Dkt. 62, C–69. However, back pay for those positions could reasonably be included in an award of compensatory damages, in light of Pickett's testimony that plaintiff would have held those positions had she been at Howard as Student Activity Coordinator. *See* Dkt. 61, B–71.

■ In connection with the award of punitive damages, defendant has called to the Court's attention a recent decision of the Supreme Court, *City of Newport v. Fact Concerts, Inc.,* — U.S. —, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In the *Newport* case, the Court squarely addressed, for the first time, the question whether municipalities are liable for punitive damages under 42 U.S.C. § 1983, and held that they are not. *Id.* at —– —, 101 S.Ct. at 2759–2761. In this Court's view, school districts such as defendant, like municipalities proper, come within the scope of the *Newport* decision, in keeping with the rationale that Congress did not intend to burden innocent taxpayers with such liability. *Id.* The Court will therefore strike the award of punitive damages against defendant. In all other respects, defendant's motions are denied.

### C. Motion for Injunctive Relief

■ Plaintiff filed a Title VII action in conjunction with the § 1983 claim, and seeks equitable relief from the Court pursuant to the former claim. Specifically, plaintiff requests that she be employed as Student Activity Coordinator at Howard, and that she be placed in the extra-duty paid positions she would otherwise have held. Plaintiff and defendant, after post-trial negotiations, nearly reached agreement as to the appropriate injunctive relief; only a minor disagreement remains. Plaintiff contends that she should be given a choice of the Student Activity position or the Career Placement Counselor position in the event that the functions, now both part of the Student Activity Coordinator's job, are divided into two positions. In view of the fact that plaintiff is primarily qualified for student activity duties, as reflected in the facts developed at trial, the Court declines to include such a provision in its Order.

The Court adopts as its own, pursuant to Title VII, the findings of the jury with regard to intentional discrimination. The Court, therefore, finds in plaintiff's favor on the Title VII claim and orders injunctive relief based on a modified version of defendant's proposed Order.

### D. Motion for Attorneys' Fees

■ Finally, plaintiff has moved for an award of attorneys' fees and costs pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976, 42 U.S.C. § 1988. The Court must look to four factors in determining a fee award: the number of hours spent on claims on which plaintiff succeeded; the appropriate hourly rate for the attorneys; the difficulty of the professional work undertaken; and the quality of the attorneys' performance. *See Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (*Lindy II*); *Lindy Brothers Builders, Inc. v. American Radiator & Standard Corp.,* 487 F.2d 161 (3d Cir. 1973) (*Lindy I*). The number of hours and the hourly rate are multiplied to arrive at the "lodestar"; the Court makes its fee award on the basis of the lodestar, which it increases or decreases to reflect unusual risk or exceptional work. *Id.*

■ Plaintiff's counsel, Bader, Dorsey & Kreshtool, have filed two affidavits in support of the motion, and defendant has submitted responses to the Court. There is no dispute as to the number of hours spent by plaintiff's attorneys on this case. *See* Dkt. 55 at 10; Dkt. 64 at 3. The Court finds that the number of hours spent was reasonable in view of the complexity of the case and the speed with which it was brought to trial. Moreover, the Court finds that the usual billing rates for plaintiffs' attorneys, ranging from $50 to $90, are reasonable, given their experience in this field of litiga-

tion. The suggested hourly rate of $30 for law clerks and paralegals is also reasonable. On the basis of these findings, the Court calculates the "lodestar" to be $27,672.50.

Insofar as defendant concedes that recovery of the lodestar would be a "reasonable" award, the disputed issue is whether the Court should increase the lodestar to take into account the contingent nature of success and the quality of counsel's work in the case. Turning first to the contingent nature of success, plaintiff undertook a considerable burden in that defendant's liability was hardly plain. At the time of filing, the case was grounded entirely on an intentional sex discrimination theory, which was colorable but by no means certain of success. On the other hand, Bader, Dorsey & Kreshtool undertook the representation under a yearly retainer arrangement they had with the Delaware State Education Association, and the firm advanced no out-of-pocket expenses. The Court therefore declines to increase the lodestar by reason of the contingent nature of success.

In determining whether the quality of an attorney's work warrants an increase in the lodestar, the Court must consider the degree of skill expected of lawyers charging similar rates, the results obtained, and the professional methods utilized. *Lindy II,* 540 F.2d at 118. The quality of legal representation was consistently high on both sides throughout this case. In view of the unusual skill demonstrated by plaintiff's counsel, the speed and efficiency with which the matter was brought to trial, and the completely successful results obtained, the Court will increase the lodestar by 25% as a bonus for the quality work of plaintiff's counsel.

In addition, plaintiff petitions the Court to include in its award the value of the attorneys' time spent on the case since the conclusion of the trial ($3757.50), *see* Dkt. 64 at 3, the fee application time ($435), *id.,* and the firm's litigation costs ($1220.03), *see* Dkt. 55 at 11. Defendant raises no specific objection to any of these expenses, and the Court deems them to be fair and reasonable. Therefore, the Court's total award is attorneys' fees in the amount of $38,783.13, and costs in the sum of $1220.03.

An Order will be entered in accordance with this Opinion.