**William KRAMEDAS, Plaintiff,**

v.

**BOARD OF EDUCATION OF the CHRISTINA SCHOOL DISTRICT, also known as the Board of Education of Interim District III, and George V. Kirk, Defendants.**

Civ. A. No. 81–273.

United States District Court, D. Delaware.

Oct. 9, 1981.

Samuel R. Russell of Biggs & Battaglia, Wilmington, Del., for plaintiff.

David H. Williams and Barbara D. Crowell of Morris, James, Hitchens & Williams, Wilmington, Del., for defendants.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

William Kramedas has brought this civil action against the newly created Board of Education of the Christina School District,[1] formerly known as Board of Education of Interim District III, and George V. Kirk, Interim Superintendent and Executive Secretary of that Board (herein collectively "Christina School Board") seeking (a) an order requiring the Christina School Board to employ plaintiff as Principal of Adult and Summer Programs commencing July 1, 1981, (b) compensatory damages of $100,000, and (c) an award of costs and attorney's fees.[2]

## I. THE COMPLAINT

In ruling upon defendants' Rule 12(b)(6) motion now for decision, the Court has accepted as true all of the well-pleaded material allegations of the complaint and all favorable inferences arising therefrom. *Leeward Petroleum, Ltd. v. Mene Grande Oil Co.*, 415 F.Supp. 158, 162 (D.Del.1976). Turning to the contents of the complaint, it first alleges that the plaintiff was formerly employed by the New Castle County School District and assigned to Area III as a school administrator with the title of Supervisor of Special Services for the school year July 1, 1980 to June 30, 1981.[3] Plaintiff further

---

1. The Delaware Legislature enacted 62 *Del. Laws* 351 in 1980 which authorized the State Board of Education to issue regulations to reorganize the school districts in New Castle County. Pursuant to this statutory authority, on November 20, 1980, the State Board promulgated regulations to divide the New Castle School District into four new school districts to be governed by separate boards of education. The State Board set July 1, 1981 as the date for the dissolution of the New Castle County School District and the assumption of authority by the four new boards of education. *See Evans v. Buchanan*, 512 F.Supp. 839, 846–47 (D.Del.

1981). The Christina School District, formerly designated as Interim District III, was one of the newly created School Districts. *Id.*

2. Docket Item ["D.I."] 1; jurisdiction is alleged to exist by virtue of 28 U.S.C. § 1343(3) and (4), the Fourteenth Amendment, 28 U.S.C. § 1331 and the doctrine of pendent jurisdiction. (D.I. 1, ¶ 3.)

3. D.I. 1, ¶ 4. School administrator contracts are made on a fiscal year basis, 14 *Del.C.* § 1329(a), and the fiscal year of all state agencies begins on July 1st of each calendar year

alleges that prior to the 1980–81 school year, he had lengthy experience as an administrator of adult and summer programs both in Area III of the New Castle County School District and the former Newark School District.[4] Plaintiff asserts that the Christina School Board, on March 10, 1981, adopted "Administrative Staffing Procedures" to be followed by the defendants in recommending for selection, and selecting, persons to be appointed to administrative positions in the Christina School District commencing on July 1, 1981.[5] In part these procedures read: [6]

> 2. The names of those persons recommended will be selected based upon the following:
>
> Primary consideration shall be given to performance in current position and performance in prior positions. In judging performance, written evaluations by an administrator's supervisor will be considered.
>
> Secondary consideration shall be given to experience, education, and certification.
>
> No consideration shall be given to seniority.

The complaint continues: "Despite plaintiff's superior qualifications for the position of Principal of Adult and Summer Programs, the defendant ... Kirk recommended another person with less qualifications than plaintiff and on the basis of seniority, in violation of the express provisions of the Administrative Staffing Procedures promulgated by the defendant, Board of Education, and the defendant, Board of Education, appointed the less qualified person to fill the position, also in violation of the Administrative Staffing Procedures." [7]

Plaintiff contends that, as a result, defendants violated his due process rights under the Fourteenth Amendment, and his rights under Delaware law [8] and deprived plaintiff of his settled property interests in continued employment as an administrator when another less qualified person was appointed Principal of the Adult and Summer Programs.[9]

The defendants have moved to dismiss the complaint under Rule 12(b)(6), F.R. Civ.P., on the grounds that plaintiff had no property interest in employment as Principal of Adult and Summer Programs, that he has stated no violations of his rights under state law and that the issue whether a less qualified person and one who happened to have greater seniority was appointed Principal is not a matter justiciable in this Court under the Fourteenth Amendment or 42 U.S.C. § 1983.[10]

## II. DISCUSSION

The United States Supreme Court has made it clear that there is no constitutional requirement of substantive or procedural due process unless a person has been deprived of a property or liberty interest. *Perry v. Sinderman*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). The present complaint does not assert that any liberty interest of plaintiff has been infringed nor does it allege that he has any contractual or statutory right to employment as Principal of Adult and Summer Programs with the Christina School Board. Plaintiff summarizes the gist of his complaint as follows: "By adopting written procedures for the

---

and ends on June 30th of the succeeding calendar year. *See* 29 *Del.C.* §§ 6507, 6501 and 6301.

4. D.I. 1, ¶ 4.

5. *Id.* ¶ 5.

6. *Id.* ¶ 4 and Ex. A.

7. *Id.* ¶ 6.

8. Other than this short, cryptic reference to "Delaware law," plaintiff has failed to elucidate

or explain in his complaint, brief or oral argument in what manner Delaware law was violated.

9. *Id.* ¶ 7. Plaintiff also alleges that the defendants acted in bad faith under color of state law (*see* 42 U.S.C. § 1983) and that he has sustained pecuniary damages and injury to his career. D.I. 1, ¶¶ 8 and 9.

10. D.I. 5.

selection of administrative personnel, the defendant Board created and defined a property interest to plaintiff's benefit and by failing to adhere to their own written standards, the defendants unconstitutionally violated plaintiff's rights which is actionable in this Court." [11]

Thus, the plaintiff contends that when the Board adopted the criteria for the selection of school administrators, it did indeed create, in the words of *Roth*, for plaintiff's benefit a "legitimate claim of entitlement to the position" of Principal of Adult and Summer Programs.[12] Then, when the defendants either incorrectly or intentionally selected another person who possessed less qualifications but who happened to have greater seniority than plaintiff, he was deprived of a property interest protected by the due process clause.

First, the Court finds no merit to plaintiff's contention that the Board's adopted guidelines for the selection of school administrators created for him a "legitimate claim of entitlement" to the position of Principal. At most, they simply afforded anyone who applied for an administrator's position a unilateral expectation that he would be *considered* for appointment along with all other applicants in light of the stated criteria. It was simply a directive to the administrative staff to be used as a guide in selecting administrators in order to assure competence. It was not a guarantee to the plaintiff or to others who applied that they would be selected.

This was the holding in *Depas v. Highland Local School District Board of Education*, 52 Ohio St.2d 193, 370 N.E.2d 744 (1977), a case which is strikingly similar to the present case. The issue in *Depas* was whether certain criteria, relating to character, professional training and demonstrated skill, loyalty and enthusiasm for work, practical success, experience, etc., adopted by the school board for evaluating a principal for reappointment or promotion, conferred upon appellant, whose prior contract as principal had expired, a property interest in

reappointment which warranted protection under the due process clause. The Ohio Supreme Court held that the board's evaluation rules did not give rise to a Fourteenth Amendment property interest to reappointment stating:

> The board's evaluation policy does not support appellant's claim that he is entitled to continued employment. That policy only implies that the board will *consider* the criteria contained in the handbook; it does not guarantee that the board will find the criteria to have been fulfilled. Since the evaluation policy sets out the framework for, but does not constitute a guarantee of, a decision to renew, it does not give rise to a Fourteenth Amendment property interest in continued employment. We find, therefore, that appellant is not entitled to procedural protection beyond that already afforded him by the board.

*Id.* at 198, 370 N.E.2d at 747.

This Court finds the Ohio Supreme Court's reasoning to be sound and is equally applicable to plaintiff's claim in this case; plaintiff simply does not have a property interest in, or a legitimate entitlement to, the position of Principal of Adult and Summer Programs.

Second, the plaintiff in this case merely disagrees with the administrative decision not to appoint him as Principal of Adult and Summer Programs. He essentially contends that a person was selected as Principal who had less qualifications and greater seniority than he. What plaintiff ignores by this argument is that not every hiring decision which calls for an evaluation of credentials rises to the level of a constitutional deprivation of due process.

It is true that federal courts have never been hesitant to intervene on constitutional grounds in the hiring, discharge and promotion decisions relating to public employees, including public school personnel, where the asserted claim is that the decisions or actions taken were tainted by racial or sex

---

**11.** D.I. 8, p. 2.

**12.** D.I. 8, p. 7.

discrimination or was intended to penalize the exercise of First Amendment rights. *Board of Regents v. Roth, supra; North Carolina Teachers Ass'n v. Asheboro City Board of Education,* 393 F.2d 736, 739 n.1 (C.A.4, 1968); *Cortner v. Baron,* 404 F.Supp. 316, 318–19 (W.D.Okl.1975). But absent such impermissible sex or racial discrimination or First Amendment restraints, federal courts will not interfere with the daily hiring, promotion or discharge decisions made by school authorities that are based on personnel evaluations of its employees or job applicants. The Supreme Court has warned that federal courts should not substitute their judgments in the name of due process for every incorrect, false, or ill-advised personnel decision made by public agencies. In this regard, the Supreme Court stated in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976):

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies [footnote omitted]. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

*Id.* at 349, 350, 96 S.Ct. at 2079, 2080.

To the same effect is *Clark v. Whiting,* 607 F.2d 634 (C.A.4, 1979), in which the Court of Appeals for the Fourth Circuit affirmed the District Court's dismissal of a § 1983 suit brought by a professor who was denied an academic promotion. In that case, North Carolina Central University had adopted rules and regulations governing faculty promotions and required the evaluation of a number of enumerated factors:

(1) teaching effectiveness; (2) scholarly achievement and contributions; (3) contributions to academic community; and, for promotion to full professor (4) concrete evidence of continued growth by scholarly contributions to his field. One of plaintiff's claims was that the defendants failed to apply the same standards in evaluating his qualifications for promotion as were used in the past for others. With respect to this claim, the Court stated:

> Denial of a faculty promotion based on an evaluation of the faculty member's "scholarly achievements" is exactly the type of determination which, under *Wood,* is not justiciable in federal court in an action under § 1983. And that has long been the ruling uniformly applied by the courts, [footnote omitted] and now affirmed in *Wood,* for which there is an abundance of supporting reasons.

> A teacher's competence and qualifications for tenure or promotion are by their very nature matters calling for highly subjective determinations, determinations which do not lend themselves to precise qualifications and are not susceptible to mechanical measurement or the use of standardized tests. [Footnote omitted]. These determinations are in "an area in which school officials must remain free to exercise their judgment" especially since these determinations present unique questions for judgment by those with expertise in the specialized academic area, [footnote omitted] capable of making professional evaluations of those elusive and intangible qualities and talents expected of the scholar and teacher. Courts are not qualified to review and substitute their judgment for these subjective, discretionary judgments of professional experts on faculty promotions or to engage independently in an intelligent informal comparison of the scholarly contributions or teaching talents of one faculty member denied promotion with those of another faculty member granted a promotion; in short, courts may not engage in "second-guessing" the University authori-

ties in connection with faculty promotions.

607 F.2d at 639–40.

In essence, what plaintiff seeks by his complaint, if carried to its logical conclusion, is the judicial supervision of the most delicate part of every state school's academic operation, a role federal courts have neither the competency nor resources to undertake. Evaluation of an administrator's qualifications for educational positions under the due process or even the equal protection clause by federal courts should not be undertaken in the absence of a claim that the defendants were motivated by racial or sex discrimination or an attempt to restrain First Amendment rights. Consequently, this Court cannot and will not intervene to second-guess the defendants' subjective discretionary judgment in applying the criteria for evaluating the applicants who applied for the position of Principal.

 The plaintiff, in an effort to avoid the impact of *Bishop v. Wood* and *Clark v. Whiting* and the cases referred to therein, cites *Tyler v. Board of Education of New Castle County Vocation-Technical School District*, 519 F.Supp. 834 (D.Del.1981).[13] Plaintiff's reliance upon the *Tyler* case is misplaced as it is a far different case from the present action. The claim in *Tyler*, based on Title VII of § 1983, was that plaintiff was discriminated against and not hired to a vacant administrative position in the Vocational School system because she was a female. Second, plaintiff claimed that the interviewing committee had no written job qualifications as required by the School Board rules and also asked sex based questions that were not part of the standard interview questions directed to male candidates. Thus, in *Tyler* the claim clearly was based on a violation of plaintiff's constitutional and statutory rights not to be discriminated against on the basis of sex—a sufficient ground for the Court's intervention under *Bishop v. Wood, supra*. In the present case, however, plaintiff has asserted no racial or sex discrimination or restraint of his First Amendment rights by the Christina School Board. He is simply challenging the application of neutral criteria contending that the defendants made an incorrect or ill-advised decision in not selecting him for the position of Principal. But the due process clause is not a guarantee against these types of personnel decisions.

Therefore, the Court concludes for the reasons discussed above that the plaintiff's complaint fails to state a claim upon which relief may be granted and the complaint will therefore be dismissed.

An order will be entered in accordance with this memorandum opinion.