Carol GREENSPAN, et al., Plaintiffs,

v.

AUTOMOBILE CLUB OF MICHIGAN, et al., Defendants.

Civ. A. No. 75–72249.

United States District Court, E. D. Michigan, S. D.

March 29, 1982.

Gerald E. Rosen, Detroit, Mich., for petitioner Focus: HOPE.

Lloyd C. Fell, Bodman, Longley & Dahling, Detroit, Mich., Martin D. Schneiderman, Steptoe & Johnson, Washington, D. C., for defendant Automobile Club of Michigan.

## OPINION GRANTING Focus: HOPE'S PETITION FOR COSTS

FEIKENS, Chief Judge.

Focus: HOPE is a Detroit-based, non-profit civil rights organization. From the beginning of this suit, it has borne all of the costs for the plaintiff class and in this opinion I address its petition to recover those costs under 42 U.S.C. § 2000e–5(k). That section authorizes the courts in proceedings under Title VII, 42 U.S.C. § 2000e, *et seq.*, to "allow the prevailing party . . . a reasonable attorney's fee as part of the costs." In a separate opinion I granted the fees petition of the four attorneys for the plaintiff class. Defendant did not dispute the propriety of some attorney fee award, although it did contest particulars of the petition. The suit was brought under Title VII and while the plaintiff class did not prevail

on all issues, it did establish that defendant Automobile Club of Michigan had discriminated against its female applicants and employees. My opinion finding liability was entered February 13, 1980. *See, Greenspan, et al. v. Automobile Club of Michigan, et al.,* 495 F.Supp. 1021 (E.D.Mich.1980).

Nonetheless, defendant disputes Focus: HOPE's entitlement to costs.* It argues that Focus: HOPE is not covered by the section because, first, Focus: HOPE was not the prevailing party and, second, because Focus: HOPE was not an attorney for the class nor did it even provide "legal" services. Defendant's first argument is beside the point. Certainly Focus: HOPE was not the prevailing party, it was not a party at all. But neither were the plaintiffs' attorneys yet no one would deny that the statute entitles them to reasonable fees.

I am no more convinced by defendant's second argument. It is plainly false to say that Focus: HOPE did not provide legal services. All of the expenses Focus: HOPE bore were related to the progress of the litigation. Focus: HOPE lent two of its staff members to act as investigators and paralegals; it financed all of the mailings to the class and all of the photocopying and depositions. It also paid for the computer analysis of defendant's personnel records and the fees of the experts who developed the programs. All of these sorts of expenses are generally understood to be compensable, if not under Section 2000e–5(f), then at the court's discretion under 28 U.S.C. § 1920. In *Northcross v. Board of Education of Memphis City Schools,* 611 F.2d 624 (6th Cir. 1979), the ruling law in this Circuit, the Court upheld awards for expert witnesses and the preparation of exhibits under § 1920. *Id.* at 642. It also allowed paralegal fees, copying costs, and travel and telephone costs under § 1988, the parallel attorney's fee statute for Title IX. However one wants to define legal services, that definition must include these

---

* I note that in granting the petition of the plaintiffs for attorneys' fees (opinion not published), I reduced the adjustment for the contingent nature of the fees to reflect the fact that in assuming the costs of this litigation, Focus: HOPE relieved the attorneys of any risk of not recovering the costs had plaintiffs lost the suit.

items when they are in the service of litigation.

■■■■ Had the class, or even its attorneys, shouldered the burden of these costs, they would, subject to my discretion, have been entitled to reimbursement. I see no reason not to reimburse Focus: HOPE. Defendant's objections are technical and without substance. The attorney's fee statutes must be interpreted to fulfill their purpose: to make possible and encourage the vindication of these important civil rights; and for purposes of civil rights actions I include within that category 28 U.S.C. § 1920. *See, Northcross, supra,* at 638. Ronald Reosti, attorney for the class through the litigation, testified in hearings on the petition that without the assistance of Focus: HOPE, the suit could never have been brought. Focus: HOPE played as critical a role in this suit as the plaintiffs' attorneys and to deny them any recovery is, consequently, contrary to the intent of the statutes.

Moreover, this applies to all of the costs Focus: HOPE actually incurred whether defendant characterizes them as out-of-pocket or otherwise, even the overhead of the organization reasonably attributable to the case. It is immaterial, as defendant argues, that the attorneys' overhead is included in their fee award. I am now addressing costs and if Focus: HOPE's participation was necessary for the suit, its overhead is also a cost of the litigation which may properly be reimbursed. Perhaps it would have been simpler had Focus: HOPE simply billed the class each month for the cost of services rendered that month. Had it, defendant could obviously not complain about overhead, personnel or supplies, such things would simply have been included in the costs of Focus: HOPE's service.

This is not to say that Focus: HOPE will receive every dollar it claims: I must still scrutinize those costs to insure that they were actually spent and are reasonably attributable to this litigation. I note, however, that Focus: HOPE has attached to its petition the affidavits of its director, Father William Cunningham, and the assistant director most involved in the case, Kenneth Kudek. Both aver that the statements in the petition are true. The petition, of course, states in a number of places that the costs were incurred for the litigation and were necessary.

Concerning the necessity of these expenditures, I will not second guess the judgment of these two men or the attorneys with whom they worked. The management of a large class action such as this is a complex undertaking demanding the skills of many clericals, typists, investigators and paralegals. Moreover, even though defendant would like this court to believe that establishing a *prima facie* case with statistics was a simple task, the experience of this case shows it to be wrong. The sort of analysis done here, which was helpful in establishing liability, is subtle and quite complicated. I have no doubt that the plaintiff class required the assistance of a number of expert statisticians and computer programmers. Consequently, where Focus: HOPE has provided adequate documentation to show that the costs were incurred and, where necessary, has described a reasonable method of attributing them to *Greenspan,* I have disallowed the costs only where I found they were not sufficiently connected to the cost of the litigation.

Following the text is a chart summarizing the award.

### 1. *Paralegal Services of Kudek and Faria*

■■ Focus: HOPE's assistant director, Kenneth Kudek, and another employee, Gary Faria, spent much of their working time since 1975 on the preparation of this suit. Although both could loosely be considered paralegals, they acted principally as investigators, interviewing the class members, and as organizers. Focus: HOPE is now requesting $312,444 in compensation for the 7,811.1 hours they spent on the case. This award is based on a claimed fair market value for paralegal services of $40 per hour.

This plainly goes far beyond the costs I have indicated I will award. I will award

what Focus: HOPE has actually paid and even an approximation for what it has become obligated to pay, but to pay fair market value for these services goes far beyond an award of costs. In finding Focus: HOPE covered by 42 U.S.C. § 2000e–5(f), as well as 28 U.S.C. § 1920, I have given those sections an expansive reading to further the goal of Congress in authorizing attorney's fees: to encourage vindication of important rights by making such litigation financially possible for competent counsel. But to award Focus: HOPE, a non-profit organization, more than its costs would be to reach beyond what the policy requires. I am sure that the funds would be well spent by the organization in any of its other programs but the funding of those programs is not an expense the defendant should bear because it has discriminated against its employees.

I believe it is incorrect to compare these employees to attorneys in private practice who would be compensated at the market value of their services. In the first place these employees are not attorneys; they are not licensed professionals. Attorneys who are professionally trained and licensed can demand fees commensurate with their skills. For these employees who are paid regularly for their services, that rate is the value of their services. Even attorneys who are employees and thus receive salaries are not treated as attorneys in private practice. In a recent case, *Glover, et al. v. Johnson, et al.*, 531 F.Supp. 1036 (E.D.Mich. 1982) (to be published), a case in which a plaintiff class of women prisoners was represented by a lawyer retained by a neighborhood legal services organization, I declined to award that attorney a fee based on a fair market value of her services and for similar reasons. Instead I awarded a fee based on the best approximation of the actual cost to the legal services organization of providing the service. My decision here is in line with that decision and I will follow that approach beginning with the salaries paid to these employees.[1]

As an alternative to fair market value of these services, Focus: HOPE has proposed a formula using actual salaries, adjusted to include space allocations and fringe benefits, divided by a standard work year composed of forty-hour work weeks. The result of this division is multiplied by the actual number of hours each employee devoted to the case. The product of this formula for both Kudek and Faria, as computed in defendant's post-trial brief, Exhibit 2, is $79,826.47.[2]

Defendant objects to using a forty-hour work week as the divisor in computing the hourly wage. It argues that dividing the

1. Focus: HOPE has cited a number of opinions in which, it believes, paralegals were compensated at fair market value. Among them are: *Stewart v. Rhodes*, 656 F.2d 1216 (6th Cir. 1981); *Tyler v. Bd. of Ed., New Castle City*, 519 F.Supp. 834 (D.Del.1981); *E.E.O.C. v. Sage Realty Corp.*, 521 F.Supp. 263 (S.D.N.Y.1981); *Cantor v. Edison*, 86 F.R.D. 752 (E.D.Mich. 1980); and *Selzer v. Berkowitz*, 477 F.Supp. 686 (E.D.N.Y.1979). In only a couple of these opinions, however, does the court specifically describe its method of calculating paralegal fees and even where they clearly award fair market value, none discuss why. Furthermore in many cases cited even by Focus: HOPE, courts have specifically awarded firms only their costs for paralegals. *See*, for example, *Lamphere v. Brown University*, 610 F.2d 46 (1st Cir. 1979); *Chapman v. Pacific Telephone*, 456 F.Supp. 77 (N.D.Cal.1978); and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).
Focus: HOPE has attempted to draw support from *Northcross*, specifically from the passage which reads: "The use of broad categories, differentiating between paralegal services, in-office services by experienced attorneys and trial services, would result in a fair and equitable fee." *Id.* at 648. But this passage does not explain how rates are to be set for the various categories. Later in the same section, the court does explain that even for attorneys, district courts should begin with the rate the attorney charges and only if the attorney had no established rate is the court to look to the fair market value. I have already explained that one must look to the attorney's rate rather than what he has been paid because in almost every case, a plaintiff's attorney is not paid until the end of a trial. For one paid through the course of the litigation, that pay is the equivalent of the attorney's hourly billing rate.

2. The charts are presented completely in defendant's Exhibits 1 and 2 to its post-trial brief. It is not necessary to reproduce them here.

yearly salary by the actual number of hours worked in a year results in a more accurate hourly wage. While I agree with defendant that its method does result in the amount Focus: HOPE actually paid these employees per hour, this method ignores the fact that many of those hours represent time spent far in excess of the normal forty-hour work week reasonably expected of employees. It also ignores the fact that probably all of these overtime hours resulted from the burdens of this litigation. To lower the normal hourly wage of these employees because they diligently worked beyond the normal demands of their jobs would be unfair to them and their employer. In the interest of fairness I must set their hourly pay based on the normal work week and allow Focus: HOPE to be compensated for all of the hours these employees worked.

### 2. Services of Father William Cunningham

■ An item closely related to the salaries of Kudek and Faria is the $7,551.79 Focus: HOPE claims as that portion of its director's, Father Cunningham, salary attributable to his work on the case. The difficulty with this item is that, according to his own testimony, Father Cunningham never accepted the money; he donates his entire salary back to Focus: HOPE. While my decision in no way reflects on the honorableness of Father Cunningham's altruism, Focus: HOPE cannot be reimbursed for sums it never spent. The item must be denied.

### 3. Other Personnel Expenses

In addition to the $7,551.79 claimed for Father Cunningham, Focus: HOPE requests reimbursement of $54,469.92 for personnel expenses. This item includes messengers, clerical, typists, paralegals other than Kudek and Faria, accountants and administrators. All of these hours are adequately documented in the time sheets of the employees and are further supported, as I have indicated, by the affidavits of Father Cunningham and Kenneth Kudek. Defendant offers no testimony to contradict this

finding. Focus: HOPE will be awarded this amount.

### 4. Consultant Fees, Travel and Expenses

■ An important, even if not principal, element in plaintiffs' presentation was the analysis of defendant's personnel records. The preparation of this analysis was quite complex and understandably required the expertise of a number of statisticians and computer programmers. Focus: HOPE is requesting reimbursement of $84,477.73 for fees they have committed to pay to eight experts. The request is amply supported by the invoices of these experts.

Defendant has alleged that Focus: HOPE in a letter dated December 9, 1979, Exhibit 7 of defendant's post-trial brief, doubled the amount it had originally agreed to pay the experts. I do not find that the letter expresses any such intention. The letter simply concerns the terms of payment, and not the total sums owing.

Defendant has also not specifically shown that the sums were either not expended or not expended for this litigation. The amount is awarded.

### 5. Data Processing

Related to the expense for the experts is the cost for the computer facilities at which the analyses were done. Focus: HOPE requests reimbursement of $36,610.94. The charge is documented by invoices from the computer centers and defendant offers no evidence to undermine this charge. The amount will be added to Focus: HOPE's award.

### 6. Photocopying Expenses

■ Focus: HOPE requests $14,246.07 for photocopying costs. This is based on 93,989 copies made in house at fifteen cents per copy and $150.72 for outside copying. Most of the copies were recorded when made. The numbers for some periods, however, were based on averages for surrounding months or on the number of pages of documents known to have been filed during a period. Both methods are reasonable as is the fifteen-cent per page charge and Focus:

HOPE will receive the entire amount requested.

### 7. Telephone Expenses

For the six years Focus: HOPE was involved in this case, it requests a total of $2,907.04 for telephone expenses. Admittedly, most long distance calls were not recorded when made. Focus: HOPE explains that unclaimed calls on its monthly bills were allocated among its projects based on the percentage of its total salaries allocable to each project. Focus: HOPE's auditors, Arthur Andersen & Co., found this a reasonable method of allocating these costs and I concur. They will be awarded.

### 8. Contract Services

Focus: HOPE documents payment of $9,428.53 to persons who were paid for services but were never added to its payroll. The documentation consists of these persons' time sheets. None indicate the project but within one or two weeks, the time would have been allocated to particular projects by the supervisors. I find this to be an adequate method of attributing the hours and will add the amount to the award.

### 9. Supplies

Had Focus: HOPE signed a contract with the plaintiff class for the sort of administrative services it rendered, its charge would undoubtedly have included some factor for its paper clips, pens and other supplies. And if the contract fee would be held reimbursable, as Focus: HOPE's costs have been here, the sum for supplies would obviously be compensated. Here Focus: HOPE requests $6,044.73, a figure computed by using a percentage equal to the ratio that personnel expenses for *Greenspan* bear to total personnel expenses. I have found this to be a reasonable method for computing other items and the sum will be added to the award.

### 10. Printing

Focus: HOPE is requesting reimbursement of $8,559.64 for printing and printing supplies, $6,333.89 of which is attributable to costs Focus: HOPE claims it incurred in sending at least one of its newsletters to the members of the class. It also seeks to charge defendant a proportionate cost for every inch of newsletter devoted to the case. There is no reasonable argument for including these costs within the award. They are not reasonably attributable to the costs of the litigation. Focus: HOPE claims that the newsletter sent to the class informed them when Jobes left the case and was replaced by Reosti but this could have been accomplished at a much lower cost, if it was necessary at all. Focus: HOPE further claims that the articles on the case bore a close relation to the case since they were intended to encourage donations for the sake of the suit. Needless to say, this is an argument against awarding costs.

Otherwise, Focus: HOPE has either provided invoices for printing or employed the same proportionate formula to apportion its own costs to the case. The award will include $2,225.75 for printing expenses.

### 11. Postage and Freight

Focus: HOPE bore the $3,948 cost of mailing the class notice in 1977. It also paid the freight expenses for the consultants. All of these charges are adequately supported. It is no argument, as defendant asserts, that postage costs are normally included within the attorney fees. In the first place, it should be clear by now that Focus: HOPE's costs are being treated independent of attorneys' fees and, in any case, the large costs of mailing to a class are not the ordinary postage costs subsumed under attorneys' fees. I award $5,541.43.

### 12. Equipment

Through the course of the litigation, Focus: HOPE acquired three large pieces of equipment for use in the case: a computer terminal, a microfiche reader-printer and a word processor. Again, defendant does not argue that the equipment was not necessary; it argues only that such costs are generally included in an attorney's

overhead and are therefore not compensable here. I have addressed this position elsewhere.

For the word processor, Focus: HOPE's claims are based upon depreciation over a three-year life. It requests $4,329.41 which includes maintenance and reflects that the equipment was also used for other projects. Defendant objects to the use of a three-year life, and I agree, the more appropriate life is the six years specified in Internal Revenue Code § 167(m). The award for the word processor will therefore be halved to $2,164.70.

For the microfiche equipment and the computer terminal, Focus: HOPE appears to be basing its request upon the rent it initially paid rather than depreciation, even though it purchased the equipment after only a few months of rental. Again, I must agree with defendant, because Focus: HOPE purchased the equipment, the proper method of computing costs is based on depreciation rather than rental. This should be obvious considering that Focus: HOPE paid probably no more than $1,750 for the terminal yet it is requesting compensation of $1,312.50, an amount which is supposed to reflect that less than half of the cost of the terminal should be attributed to this case. Focus: HOPE probably expended something for maintenance but it does not explain how using the rent accounts for that. Using $1,750 as the cost of the terminal, a six-year useful life, and accepting the claimed twenty-one months of use on this case, the award for this unit will be $257.25.

The same method used for the microfiche equipment, purchased at slightly above $1,795, gives a result of $374.10. Adding to that $597.20 which Focus: HOPE paid for the use of components it purchased results in a figure of $971.30, which will be awarded.

The total award for equipment is therefore $3,393.25.

13. *Accounting and Professional*

■ The $2,394 Focus: HOPE requests under this heading is its allocation to this project of its fees to Arthur Andersen & Co.

for conducting the yearly audits. I find the connection between this case and Focus: HOPE's yearly audit far too attenuated to support this claim and it must, therefore, be denied.

14. *Legal Expenses*

Focus: HOPE is requesting $34,270.59 for legal expenses. Of this amount, $1,000 is payment to its current attorneys for the prosecution of this petition (supporting documents to Trial Exhibit 12). An additional $5,000 is for unpaid hours similarly expended (Focus: HOPE Trial Exhibit 11). This $6,000, along with the petition of the attorneys for like services, will be addressed in a separate opinion and will therefore not be awarded here.

The remaining $28,270.59 is adequately documented by both cancelled checks drawn to the attorneys as advances for their costs or in payment of legal services performed on behalf of the organization. Where the amount is for legal services, I am satisfied there is no duplication. Defendant would deny $2,963.40 paid to Focus: HOPE's attorney Neil Bush for representation early in the case when defendant attempted to decertify the class by showing some weakness in Focus: HOPE's financing. Defendant refers to this as noncompensable "overhead." Labels aside, this cost was plainly incurred in the prosecution of this case and is, therefore, compensable.

■ Defendant would also deny $2,754.87 of the advances which apparently were to reimburse for copies of depositions of persons who did not testify. Defendant cites no case law which would disallow the costs of such depositions nor does it demonstrate that these depositions were not necessary. Consistent with the introductory discussion, this amount will be awarded.

In total, Focus: HOPE will receive $28,270.59 for this item.

15. *Depositions and Transcripts*

Of the $13,280.87 claimed, defendant would allow $9,585.92, which includes the cost of the trial transcript. The remaining

amount, defendant would disallow either because the deponents did not testify or because the charge is not documented. As to the lack of documentation, I find that the supporting documents to Focus: HOPE's trial exhibits adequately connect the costs to this case. Defendant must remember that it stipulated to the entry of these documents to avoid hours of unnecessary hearing simply to identify the documents. Further, I have addressed above defendant's arguments concerning the depositions of persons who were not called as witnesses. The entire claim will be awarded.

### 16. *Travel Expenses*

Focus: HOPE has also requested $1,340.15 in travel expenses for its own employees. They traveled either to interview experts or to meet with them in the preparation of testimony. Defendant does not attack these costs and I find them to be reasonable. They will be awarded.

### 17. *Auto Expenses*

Defendant would deny Focus: HOPE the $821.31 because, it claims, the amount lacks documentation. Focus: HOPE has presented a copy of its general ledger sheets which do show the item and which it claims are based on logs which are not maintained after the annual audit. I find this to be adequate documentation.

### 18. *Miscellaneous Expenses*

In addition to the items discussed above, Focus: HOPE has requested $582.70 for miscellaneous expenses. These items were apparently inadvertently not included under the headings where they belong. They include a $367.40 reimbursement of expenses to Marilyn Mosier, and $215.30 in photocopying costs. While not conceding that the costs are compensable, defendant has subsequently admitted that the items which make up these expenses are at least documented (see defendant's letter to the court dated March 9, 1982, p. 7). They will be awarded.

### 19. *Interest and Inflation*

Focus: HOPE is also seeking interest on its costs. It urges the application of a principle that a prevailing party must be made completely whole as if it had never been involved in litigation. But permitting a recovery of *all* costs of litigation is not an established practice, and this is perhaps so because of the recognition of the impossibility of ever fully compensating a litigant for the time, energy and anxiety expended in a lawsuit. This reality leads to a cautious approach. While the goal of making a litigant whole is a factor to consider, it is not the only factor. It is well established that the award of costs under § 1920 and attorney fees under § 2000e–5(f) is a matter of judicial discretion. This must be so because of the obvious need to balance the competing interests in cost evaluation to arrive at a just result. Costs are not liquidated damages, nor are costs intended to be punitive in nature. An award of costs must approximate out-of-pocket expense.

A judge's discretion is not unbridled. It must be guided by notions of fairness. Fairness is a subtle ideal. It is never sufficient, for example, in a lawsuit to ask what is fair to only one party. Fairness requires an adjustment, a balancing of the legitimate interests of all of the parties and even beyond them to the interests of the efficient administration of justice. Every hour spent calculating vacation hours, equipment costs and consultant fees, matters plainly, and particularly in this case, ancillary to the important right vindicated in the main suit, are hours distracted from the resolution of other cases.

In this petition, the award of even simple interest would be no small task. Costs which are allowed are not easily broken down by years. Precise interest calculations on each item would be a substantial task. Such an effort would unfairly consume the resources of this court. Prejudgment interest will not be awarded.

For the same reason, Focus: HOPE is not entitled to the additional inflation adjustment it seeks.

The appropriate order is entered herewith.

APPENDIX

SUMMARY CHART OF COSTS
AWARDED TO Focus: HOPE

| | |
|---|---|
| Paralegal Services | $79,826.47 |
| Other Personnel | 54,469.92 |
| Consultant Fees | 84,477.73 |
| Data Processing | 36,610.94 |
| Photocopying | 14,246.07 |
| Telephone | 2,907.04 |
| Contract Services | 9,428.53 |
| Supplies | 6,044.73 |
| Printing | 2,225.75 |
| Postage and Freight | 5,541.43 |
| Equipment | 3,393.25 |
| Legal Fees and Expenses | 28,270.59 |
| Depositions and Transcripts | 13,280.87 |
| Travel | 1,340.15 |
| Auto Mileage | 821.31 |
| Miscellaneous | 582.70 |
| Total | $343,467.48 |

